Argued November 10, affirmed December 14, 1960, petition for
rehearing denied January 17, 1961

# MILLER LUMBER CORPORATION *v.* MILLER
## 357 P. 2d 503

*R. B. Maxwell* and *H. F. Smith,* Klamath Falls, argued the cause and filed briefs for the appellant.

*Clif D. Ouellette,* Medford, argued the cause for the respondent. With him on the brief was J. Anthony Giacomini, Klamath Falls.

Before McAllister, Chief Justice, and Sloan, O'Connell, Goodwin and Howell, Justices.

SLOAN, J.

Plaintiff corporation brought this action to recover money alleged to be due plaintiff from defendant's decedent, W. D. Miller. Except for qualifying shares, the deceased, Miller, had been the sole stockholder of plaintiff. Defense to the action was that plaintiff was the mere alter ego of Miller so that plaintiff was not a separate legal entity and the action could not be maintained. The case was tried without a jury. The court found for plaintiff, defendant appeals from the judgment entered. It is necessary to decide if a corporation's separate legal identity is lost for the sole reason that all of the stock is owned by one person. A background of facts will be helpful.

For several years before his death in 1956 Miller had been an entrepreneur of considerable proportions. He had some interest in or owned a lumber mill, timber, hotel, radio station, a construction company, a large ranch in Montana and other unspecified property and business interests. The record is not clear as to the nature of his ownership in each enterprise mentioned. From income tax returns in evidence it appears that he was a partner in the ranch. The construction business, hotel and radio station appear to have been corporations. The record does not reveal the extent of his ownership in any of the business entities mentioned, other than in plaintiff corporation. Miller's center of operation was in Klamath Falls and northern California.

Plaintiff was organized by Miller in 1949. In exchange for all authorized shares of stock, except the qualifying shares, Miller transferred to the corporation "all of the property and assets of his logging, lumbering and sawmill operations near Etna in

Siskiyou County, California," except timber lands. Thereafter, until his death in 1956, Miller supervised the operation of plaintiff. However, the actual day-to-day management appears to have been conducted by a trusted manager or superintendent who had been a long-time employee of Miller.

The basis of this law suit developed from a "drawing account" entered on the books of plaintiff shortly after its incorporation. This account recorded a large number of transactions, charges and credits between Miller and plaintiff. It ranged from small items of charge and credit in amounts less than $5.00 to timber transactions and payments ranging upwards of $30,000. The exhibit in evidence which contained a complete list of these debits and credits numbered 26 pages of closely typewritten items. The account appears to have been accurately and carefully kept. During the period between 1949 and his death in 1956 there were periods when the account showed a balance due Miller from the corporation and at other times Miller was indebted to the corporation. At the time of his death the account disclosed total charges against Miller of $977,402.05 against total credits due him of $859,650.77, or a balance due the corporation from Miller of $117,751.28. There was a second cause of action for which additional judgment was entered. We will not discuss that amount separately. The issues were the same.

Miller's will gave his shares of stock in plaintiff to certain minor children. The remainder of his estate went to other persons not identified in the record. Within about a year after the will was admitted to probate the stock was distributed to a guardian of the minor children. The guardian assumed the management of plaintiff. The guardian thus determined the

amount claimed to be due plaintiff from Miller and caused plaintiff to bring this action against defendant, as executor of Miller's will and estate, to recover. The defense, as stated, was that plaintiff and Miller were one and the same legal person and the debt could not be recovered. It may be said that this problem is not limited to a one-man corporation. It also is found in the wholly-owned subsidiary corporations.

There are probably few doctrines in the law so firmly established as the separate legal existence of a corporation as distinct from its stockholders. It has been said that this be true whether the stockholders are one or many. The writings and case law on the subject are so voluminous that it is possible to refer to only the more pertinent references thereto. One of the earlier treatises on the subject, and much cited in later works, is Wormser, Piercing the Veil of Corporate Entity, 1912, 12 Col L R 496. In respect to the "one-man" corporation the author says, in part:

> "The cases which hold that the only stockholder in the corporation, or the only two or three stockholders in a corporation, become the corporation itself and can deal with the corporate property *ad libitum* are marked, it is true, by a disregard of the theory of corporate entity, but the disregard is an unsound and erroneous one. It is just in this class of case, standing on such facts *per se,* that the doctrine of corporate entity should be adhered to. The writer does not mean to intimate that if in these cases any of the elements previously mentioned which warrant a disregard of the doctrine of corporate entity are present, that the concept should nevertheless be adhered to. What is meant is this: that simply because a company is reduced in number to one or two, or a very few stockholders, does not warrant for a

single instant, *per se,* the disregard of the corporate entity. Whether there is one shareholder in a corporation or whether there are ten thousand makes no difference, in other words, unless some of the circumstances aforementioned which warrant a disregard of the theory of corporate entity are present." *op cit,* p 515.

One of the more recent treatments of the subject is found in a symposium on the close corporation found in 18 Law & Contemp Prob, 1953, p 433 et seq. A part of that symposium is a comprehensive treatment of "Limited Liability with One-Man Companies and Subsidiary Corporations" by Bernard F. Cataldo. That author says:

"The extent to which the courts have gone in upholding the doctrine of corporate entity and its companion, limited liability, finds vivid illustration in those cases which concern the closest of close corporations—the one-man company, the family corporation, and the subsidiary corporation." *op cit,* p 474.

Another more recent review is Fuller, The Incorporated Individual: A Study of the One-Man Company, 1938, 51 Harv L Rev 1373.

The above references include only those which appear to have been most cited. Most of the authority has been cited and analyzed in O'Neal, Close Corporations, 1958, ch 1. That work affords a complete review of the law on the subject to that date. The author concludes that a corporation's "legal personality" is not lost because all of the stock is owned by one person. See also, 1 Fletcher's Cyclopedia Corporations, (Perm Ed, 1931) ch 2.

The case law particularly pertinent to this case is found in the bankruptcy cases in the federal courts. In *Wheeler v. Smith,* 30 F2d 59, (9th Cir 1929),

involving an Oregon corporation, it was held that the claim of the sole stockholder against his bankrupt corporation should be allowed. "While the claim of a sole stockholder against a bankrupt corporation should be scrutinized with care, it is not the law that such a claim should be rejected merely because the claimant is such sole stockholder." p 61. In a similar case, *In re John Koke Co.*, 38 F2d 232, 233, the same circuit court in the following year said:

> "The rule is quite elementary that a corporation is an entity separate and distinct from its stockholders, with separate and distinct rights and liabilities; and this is true even though a single individual may own all, or nearly all, of the capital stock. True, courts, in exceptional cases, will look behind the corporate form in order to redress fraud, protect the rights of third persons, or prevent a palpable injustice; but there is no reason for invoking any such exceptional rule here, because it is not claimed that there was fraud, concealment, or even ignorance of any material fact in the original transaction. * * *"

*United States v. Weissman*, 219 F2d 837, (2d Cir 1955), was a criminal case wherein the sole stockholder of two corporations was accused of concealing the property of one of the corporations from a trustee in bankruptcy. The court, by L. Hand, J., said:

> "It is true that there can be legal transactions between two corporations all of whose shares are owned by a single individual, and that the same obligations will arise out of them as would arise, had they been between either corporation and a third person. That a 'one man' corporation is a valid jural person was decided by the House of Lords in 1897, and has not been doubted ever since. It is enough if the transaction takes an 'objective' form; * * *." (footnotes omitted) *op cit*, p 838.

In a case involving creditors' rights wherein two corporations were owned by a single stockholder, our own court has expressed the same rule as that in the authority above cited. *Security S. & T. Co. v. Portland F. M. Co.*, 1928, 124 Or 276, 261 P 432. In that case the argument was made, as here, that since one person owned all of the stock in the two companies involved and exercised absolute control over each that the corporate fiction should be disregarded. The opinion of the court said, in part, that both companies had maintained separate records of account, each had its own assets and liabilities and transacted its separate business. The court held: "Under such circumstances the fact that Houser was the only stockholder is not a controlling factor, * * *." The court proceeded to say that an equity court could look through the corporate fiction to prevent fraud "whether the shares were owned by one person or many." 124 Or pp 287-8. In that case this court did not disregard the corporate entity.

The Massachusetts court, in an action by a creditor, to reach the assets of a corporation upon the debt of its sole stockholder held:

"* * * In the absence of a fraudulent purpose in the organization of a corporation, it is settled law in this commonwealth that the ownership of all the stock and absolute control of the affairs of a corporation do not make that corporation and that individual owner identical. Nor do such ownership and control make the property of the corporation subject to the payment of the stockholders' debts. * * *" *Star Brewing Co. v. Flynn*, 1921, 237 Mass 213, 129 NE 438, 439.

The Supreme Court of Illinois in *Superior Coal Co. v. Department of Finance*, 1941, 337 Ill 282, 36 NE2d 354, 356, has held that the complete identity of

stockholders and management of two corporations will not, of itself, destroy the separate corporate entity. Nor, on the other hand, will it permit those who have enjoyed the benefits of separate identification to deny the separation when it may be advantageous to do so.

The same rule was followed in *Hollywood Cleaning & Press Co. v. Hollywood L. Service*, 1932, 217 Cal 124, 17 P2d 709.

In citing the above authority we have not overlooked the cases in which the separation of legal identity has been denied. Suffice it to say that we have found no case similar to this one in which the corporate identity was denied.

In this case there was no allegation or evidence of fraud or any of the other causes which preclude separation. The record does not show that any third person was involved. Careful records were maintained of both large and small items of debit and credit. Miller's personal income tax returns, in evidence, disclose meticulous separation of items of income and expense in respect to his several enterprises. The record also shows that Miller, individually, and his various enterprises had indebtedness to other persons. There was no indication of financial insolvency of any of them. Each of the businesses in which he was engaged had separate assets and liabilities. There was no evidence of commingling of accounts or of the assets and liabilities. It is fair to assume that other persons, including tax collectors, had an interest, great or small, that required accurate separation of the business and accounts of these organizations. Miller's own intent to repay advances from plaintiff to himself was reflected in cash pay-

ments to plaintiff to either balance or credit the account.

■ Without further detail of the evidence we hold that the ownership by Miller of substantially all of the stock of plaintiff, of itself, did not avoid the separate legal identity of plaintiff nor excuse his successor in interest from the obligation to pay Miller's indebtedness to plaintiff. In so holding we cannot attempt to say in what instances fraudulent, unlawful or other conduct not in evidence here would justify piercing the corporate veil. Necessarily, such decision must abide the event.

■■ One other assignment concerns the refusal of the trial court to allow the filing of an amended answer, containing a counterclaim, shortly prior to the date set for the trial of this case. Another allied assignment complains of the failure of the trial court to continue the trial of this case so that a separate action filed by defendant against plaintiff could be heard at the same time. These matters were within the court's discretion and no abuse is found. It is apparent from this record that a separate trial of the issues presented by defendant's separate action would result in greater clarity and understanding of those issues.

■ The trial court's findings of fact in this case contain only the statement that the court finds for plaintiff in the amounts specified. Defendant complains that such a finding will not support a judgment; that more detailed findings are required. In some cases that is true. Here, however, the issues were such that when the court concluded that plaintiff could lawfully maintain the action there was no other finding to make, except the amount due.

Prior to the trial plaintiff had prepared a detailed

account of the amount claimed. This was submitted to defendant. Competent accountants representing both parties then examined the accounting and books of plaintiff. As a result certain adjustments were made by the accountants. Most of the adjustments were agreeable and accepted by both parties. The adjustments included both charges against and credits to plaintiff. The result of these adjustments was the balance previously mentioned and the difference was the judgment entered on the first cause of action. It was not denied that the ultimate account received in evidence accurately reflected the amounts shown in the books of plaintiff.

However, in addition to the adjustments agreed to, defendant claimed certain other adjustments. The substantial ones consisted of claims for the value of timber sold to plaintiff by Miller for which no charge appeared on plaintiff's record books. Defendant's accountant, from other records, attempted to reconstruct a supposed charge that the accountant said should have been made. The records he said he relied on were not in evidence. The accountant based his opinion in large part upon the result of an audit made by agents of the Internal Revenue Service. What the audit was for or what it would reveal was not in evidence. There was, therefore, no substantial evidence to support the claim of defendant for the additional adjustments to this account.

■ Therefore, the only additional finding of fact that the court could have made would have been to say he disallowed defendant's claim for the additional adjustments—which he obviously did. It would have added nothing to the findings to have specifically said so. The findings were definitely not so vague and uncertain as to cause this court doubt as to what

the court intended to find. *Larsen v. Martin,* 1943, 172 Or 605, 611, 143 P2d 239. In this case there was no error in the failure of the court to give more detailed findings and to refuse defendant's requested findings. *Maeder Steel Products Co. v. Zanello,* 1924, 109 Or 562, 220 P 155.

Other assignments are directed at the court's admission or refusal to admit certain evidence. Each alleged error was a matter within the court's discretion. All of the claimed errors relate to evidence in rebuttal of defendant's claim for the additional adjustments against plaintiff arising from the timber transactions above referred to. We have already said that there was no substantial evidence presented by defendant to justify the court in allowing the defendant's claim. If all of the rebuttal evidence had been ignored, the court would still have been justified in denying defendant's claim for the additional adjustments.

This was an action at law. There was substantial evidence to support the court's findings and they are conclusive. *Sexton v. Kelly,* 1948, 185 Or 1, 200 P2d 950.

The judgment is affirmed.