AMFAC MECHANICAL SUPPLY CO., Appellant ·(Plaintiff),

v.

Carl FEDERER and Beverly Federer, Appellees (Defendants).

No. 5646.

Supreme Court of Wyoming.

May 21, 1982.

---

74

Bernard Q. Phelan of Graves, Hacker & Phelan, P. C., Cheyenne, for appellant.

John W. Pattno of Pattno & Smith, Cheyenne, for appellees.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

RAPER, Justice.

Amfac Mechanical Supply Company (appellant), in order to collect an unpaid account owed by C & B Plumbing and Heating, Inc. (C & B), in the amount of approximately $11,000, sued Carl and Beverly Federer (appellees) to pierce the corporate veil and reach the personal assets of appellees. At the end of the appellant's case in a nonjury trial, the trial judge, after briefs had been submitted, granted appellees' motion to dismiss. In his letter opinion the judge expressed his view that appellant had failed to prove a prima facie case because it did not "show that the corporation was organized or used to mislead creditors or to perpetrate fraud upon them." On appeal, appellant argues:

1. Proof of fraud or bad faith is not a prerequisite in a case to "pierce the corporate veil."

2. Appellant offered sufficient evidence to prove a prima facie case.

We will reverse and remand with directions to vacate the judgment entered for appellees and proceed with the trial.

The appellant on June 16, 1981, filed a complaint against appellees alleging that the latter were the sole owners of C & B, a corporation. The complaint went on to allege that the corporation was organized by the appellees as their alter ego for the purposes of performing plumbing and heating construction contracts under a corporate guise and that the corporation was a sham. It was further claimed that appellant had sued C & B and taken a default judgment in the sum of $11,497.09, plus attorney's fees of $180.00 and costs in the amount of $27.50, totaling $11,704.59 with interest at the statutory rate from August 7, 1980. Personal judgment against appellees was prayed for. Appellees admitted corporate existence of C & B but denied the other allegations and personal liability.

Before embarking upon a disposition of this appeal, it is necessary to lay down the ground rules pertaining to review of proceedings in the trial court where at the close of the plaintiff's evidence, a motion to dismiss was granted. In *Kure v. Chevrolet Motor Division*, Wyo., 581 P.2d 603 (1978), this court set out at some length the various rules and principles involved in making such an early trial disposition of a nonjury case. Rule 41(b)(1), W.R.C.P.:

"(1) * * * After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits."

The trial judge in this case signed a judgment adjudicating the case on its merits.

In *Kure*, after reviewing precedent, this court set out an approved approach to be used by a trial judge in considering such a motion, which we follow. When plaintiff's proof fails in some aspect, the motion must be granted. When plaintiff's evidence is overpowering, the trial judge's work is easy and the motion should be denied. When the plaintiff has presented only a prima facie case founded on unimpeached evidence, the district judge should not grant the motion, even though he sits in the stead of a jury as the trier of facts and may not feel at the juncture of the trial that plaintiff has sustained his proof burden. When, in the latter position, the trial judge should accept the rule's alternative whereby he "may decline to render any judgment until the close of all the evidence" and deny the motion.[1]

In our review of the trial court's judgment we are provided a guide by Rule 41(b)(1), supra, in that it requires the trial judge to make findings as provided in Rule 52(a), W.R.C.P., when a motion to dismiss is granted. Rule 52(a) permits the court to do so by its written memorandum. Here, the court took the case under advisement and issued a letter opinion which incorporated its findings and constituted compliance with Rule 41(b)(1). Kure further tells us that the evidence must be considered in the light

[1] Wright & Miller, Federal Practice and Procedure: Civil § 2371, p. 226, fn. 63, observes that this rule, first announced by this court in *Ar*-*benz v. Bebout*, Wyo., 444 P.2d 317, 319 (1968), was derived from *Rogge v. Weaver*, Alaska, 368 P.2d 810, 813 (1962).

most favorable to the plaintiff but we may freely review the trial court's conclusions of law.

■ A motion to dismiss at the close of plaintiff's case should not be granted unless upon any issue there can be said to be in support thereof no evidence and no substantial inferences. *African Metals Corporation v. Bullowa*, 288 N.Y. 78, 41 N.E.2d 466 (1942), reh. denied 288 N.Y. 673, 43 N.E.2d 75. This case is cited at this point for the reason that it involves piercing of the corporate veil. The trial court had dismissed the plaintiff's complaint against individual shareholders on the ground that the transaction at issue was corporate and no personal liability resulted. The New York Court of Appeals acknowledged that the law permitted individuals to incorporate their business in order to escape personal liability. But, the incorporation was not available as a means of exempting the individuals from liability for an enterprise actually carried on by the individuals independent of the corporate structure. For example, the corporation's profits must have been available to meet corporate liabilities before the individuals were entitled to a share. A corporation was created for the legitimate convenience of the stockholders, not as a mere mask for the individuals' personal acts and responsibilities. When the corporation was treated by the owners as their alter ego, the New York court ruled that courts should ignore the corporate structure and make the stockholders liable for the corporate debts. The appeals court held that there was a prima facie case made out by plaintiff's evidence indicating that those corporate principles applied, and then remanded for a new trial. A similar state of facts exists in the case now before us and the motion to dismiss should not have been granted in that a prima facie case for appellant was made.

In the trial judge's letter opinion certain facts of the case were discussed:

"The defendants formed a corporation known as C & B Plumbing and Heating, Inc. in February of 1977. A certificate of incorporation was issued and the defend-

ants became the sole stockholders as shown by the corporate stock transfer record, and were directors and the officers of said corporation. The corporation also had a seal, minutes of its organization meeting and bylaws of the corporation all appear in the corporate minute book. It was testified that the organizational meeting was held and the bylaws were in fact adopted. Further, the testimony was that other meetings were held although the corporate minute book did not reflect further meetings after the organizational meeting.

"The corporation carried on the business of plumbing and heating work for approximately a year and the testimony was that it became indebted to the plaintiff in the approximate sum of $11,000.00, after which time the plaintiff refused to extend further credit to the corporation, but continued to sell to the corporation on a cash basis. The facts further indicate that the individual defendants borrowed $50,000.00 from Equality State Bank, for the purpose of providing operating capital to the corporation. The defendants individually signed and guaranteed this note and continued to make payments on it individually after the corporation had made payments totalling approximately $27,000.00, being first applied to interest and then to principal. The testimony is that the individual defendants still owe approximately $32,000.00 to the Equality State Bank on this note which they are paying individually, and the testimony is uncontroverted that the entire proceeds of the $50,000.00 loan went into the corporation.

"The Court further finds in this case that the plaintiff dealt with the corporation, knowing it to be a corporation in this case and then eventually withheld further credit from the corporation and dealt with it only on a cash on delivery basis.

\*     \*     \*     \*     \*     \*

"The Court in the present case does find that the corporation had a genuine corporate existence, that it was not operated as the alter ego for the individual defend-

ants for their personal benefit and advantage, other than those advantages and benefits that are specifically and legitimately permitted to corporate entities, i.e., lack of personal liability for corporate actions, etc. The Court further finds that there was no evidence to show that the individual defendants in the corporation had, intentionally, intermingled any personal and financial affairs, even though the individual defendants did exercise control over the corporation and were the owners of all of the stock of the corporation, as well as being president and secretary-treasurer, and directors. The only asset which the Court finds from the evidence which was purchased by the corporation but titled in the name of the individual defendant, Carl Federer, was a new vehicle. From the testimony and evidence, the Court finds that this was an oversight in the invoicing and titling of the vehicle, and not the deliberate attempt to defraud creditors."

We will discover and disclose the error of some of the findings in the last foregoing paragraph as we move through this opinion.

This court rather recently in *Opal Mercantile v. Tamblyn*, Wyo., 616 P.2d 776, 778 (1980), has spoken to the matter of piercing the corporate veil:

"Ordinarily, a corporation is a separate entity distinct from that of individuals comprising it. *State ex rel. Christensen v. Nugget Coal Co.*, 60 Wyo. 51, 144 P.2d 944 (1944); *Durlacher v. Frazer*, 8 Wyo. 58, 55 P. 306 (1898). This is true although all or a majority of the stock is owned by a single individual. *Durlacher v. Frazer*, supra; *W. D. Miller Lumber Corporation v. Miller*, 225 Or. 427, 357 P.2d 503 (1960). However, in an appropriate case and in furtherance of public policy or the ends of justice, the doctrine will be disregarded. *Peters Grazing Association v. Legerski*, [Wyo., 544 P.2d 449] supra; *State ex rel. Christensen v. Nugget Coal Co.*, supra; *Caldwell v. Roach*, 44 Wyo. 319, 12 P.2d 376 (1932). * * *

*       *       *       *       *       *

"Each case involving the disregard of the separate entity doctrine must be governed by the special facts of that case. * * * "

■ We find error in the trial court's conclusion of law that appellant failed to "show that the corporation was organized or used to mislead creditors or to perpetrate fraud upon them." This court has never so held but has pointed out in *Opal* that, in an appropriate case and in furtherance of public policy or the ends of justice, the doctrine of limited liability will be disregarded and each case will be governed by and decided on its own facts. This court has never had occasion to consider facts such as those now presented. The appeal now before us does have special facets which, according to a substantial body of law, make this an appropriate case in which the separate corporate entity may be disregarded.

The appellant relies heavily on *Arnold v. Browne*, 27 Cal.App.3d 386, 103 Cal.Rptr. 775 (1972). We really have no argument with that case. It is a useful reference in that it does set out some of the many factors which are pertinent to justifying a disregard of the corporate entity. The case starts with the general rule gleaned from California authority, not inconsistent with this court's utterances:

" * * * ' "Before a corporation's acts and obligations can be legally recognized as those of a particular person, and vice versa, it must be made to appear that the corporation is not only influenced and governed by that person, but that there is such a unity of interest and ownership that the individuality, or separateness, of such person and corporation has ceased, and that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice." ' [Citations.]" 103 Cal.Rptr. at 781.

*Arnold* then goes on to itemize possible factors to be considered:

"Among the possible factors pertinent to the trial court's determination are: commingling of funds and other assets, fail-

ure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses; the treatment by an individual of the assets of the corporation as his own; the failure to obtain authority to issue or subscribe to stock; the holding out by an individual that he is personally liable for the debts of the corporation; the failure to maintain minutes or adequate corporate records and the confusion of the records of the separate entities; the identical equitable ownership in the two entities; the identification of the equitable owners thereof with the domination and control of the two entities; identification of the directors and officers of the two entities in the responsible supervision and management; the failure to adequately capitalize a corporation; the absence of corporate assets, and undercapitalization; the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation; the concealment and misrepresentation of the identity of the responsible ownership, management and financial interest or concealment of personal business activities; the disregard of legal formalities and the failure to maintain arm's length relationships among related entities; the use of the corporate entity to procure labor, services or merchandise for another person or entity; the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another; the contracting with another with intent to avoid performance by use of a corporation as a subterfuge of illegal transactions; and the formation and use of a corporation to transfer to it the existing liability of another person or entity [citation]." 103 Cal.Rptr. at 781–782.

Appellant argues that several of these factors are present and controlling. We agree that they are present and controlling for the purpose of establishing a prima facie case to avoid granting a motion to dismiss at the close of appellant's case in chief. They are supported by an abundance of other authority.

The appellant relied on the testimony of the appellees and its records; this was exclusive of the testimony of an officer of appellant to prove the account and how appellant dealt with appellees, which we will later mention in more detail. There is no doubt but that appellees controlled the corporation. That is usually true in a family corporation such as this. Someone always controls a corporation. While a fictional entity, it requires human direction. What is important here is that appellees, as stockholders in a closely-held corporation, controlled the corporate affairs. No stock was offered for sale to the public. In a public offering and sale the stockholders would rely more on management and operation by others.

■ First, appellant claims appellees commingled their property and funds with those of the corporation. A 1977 Ford Bronco belonging to Carl Federer was purportedly sold to C & B though the title was never transferred. It was traded for a Ford pickup. A 1979 pickup was also purchased. When the title to the latter pickup was issued, it showed the owner as "Federer, Carl dba/ C & B Plumbing & Heating." The truck was carried as a corporate asset on C & B's CPA-prepared financial statement. In any event, with the title in that shape, appellee Carl Federer would have no trouble transferring title as an individual. As to intermingling of funds, a number of invoices were produced indicating that appellee Carl Federer personally billed Consolidated Construction for plumbing work; and C & B, over the same period of time, had also billed Consolidated for work done. In checking bank deposits against the invoices, in some cases the amounts paid were deposited to C & B and in others amounts paid were deposited to the personal account of the appellees. All of this definitely shows disregard of the corporate entity by the stockholders as far as a prima facie showing by appellant is concerned.

In that connection, there are some elements of judicial estoppel present. In a previous trial on a complaint by another creditor, Carl Federer testified that he had diverted monies owing C & B to the personal account of appellees. In the case now before us, appellee Carl Federer testified that no funds due C & B were diverted to the personal account of appellees. Other testimony was also retailored by Federer to fit the present case.[2] The courts will not allow parties to blow hot and cold in the same breath and in separate judicial proceedings, a party will not be allowed to maintain inconsistent positions. *Gray v. Fitzhugh*, Wyo., 576 P.2d 88 (1978); *Allen v. Allen*, Wyo., 550 P.2d 1137 (1976). We therefore consider the point favorable to appellant on a motion to dismiss.

In *Burns v. Norwesco Marine, Inc.*, 13 Wash.App. 414, 535 P.2d 860 (1975), the corporate veil was pierced. There the corporation stopped doing business in the name of one corporation and continued the same business in the name of another corporation. In the case before us, appellees discontinued doing business in the name of the corporation and appellee Carl Federer contracted plumbing business in his own name, with the proceeds going into the personal account of his and his wife, Beverly. The inference favorable to the appellant is that it placed the proceeds beyond the reach of corporate creditors. C & B has never been formally dissolved.

For a corporation to be accorded treatment as a separate entity, it must exist and function as such and not be the alter ego of the person owning and controlling it and cannot be used or ignored just to fit the convenience of the individual. *Cohen v. Williams*, 294 Ala. 417, 318 So.2d 279 (1975). In *Cohen*, the sole stockholder did not keep corporate minutes and "dissolved" the corporation by ceasing to do business in the corporate name. In addition to holding that such a circumstance justified a disregard of the corporate entity, the court held that actual fraud is not necessary as a predicate for discarding separate corporate existence. It may be discarded to prevent unjust or inequitable consequences, certainly present here in a prima facie sense. *Caldwell v. Roach*, 44 Wyo. 319, 12 P.2d 376 (1932).

Fraud is, of course, a matter of concern in suits to disregard corporate fictions, but it is not a prerequisite to such a result, especially where there is gross undercapitalization and complete domination by the stockholders. *National Marine Service, Inc. v. C. J. Thibodeaux and Company*, 501 F.2d 940 (5th Cir. 1974). Attractive language was used by the court. The corporate veil according to the court had been used to "enrobe" the corporation and "was so diaphanous" that it could be seen through. The trial judge's conclusion of law and his findings of fact there, as well as in the case before us, inferred that there must be a showing of fraud or an intent to defraud. That is just simply not the law; though, if present, it would have been grounds to disregard the corporate entity. Nor is actual intent to defraud necessary. It is sufficient if the refusal to recognize the fact of the identity of the corporate existence by the individual brings about an inequitable result. *State, ex rel. Christensen v. Nugget Coal Co.*, 60 Wyo. 51, 144 P.2d 944 (1944).

Inadequate capitalization is present in this case to the extent of making a prima facie showing. The appellees contributed only $500 and "some tools," and perhaps a vehicle for their 30,000 shares of stock. The $50,000 they borrowed personally and in turn loaned to the corporation was not capital but a debt. The requirement of adequate capitalization means that the net assets of the corporation must be adequate to do business. " 'Net assets' means the amount by which the total assets of a corporation exceed the total debts of the corpora-

---

**2.** The previous case was one also brought by an unpaid creditor of C & B, against appellees on the same theory as that asserted here. It is apparent from the transcript that at the close of the evidence in that case, the trial judge held for the creditor; but, before judgment was entered, appellees personally settled with the creditor of C & B. That creditor got a preference.

tion." Section 17–1–102(a)(ix), W.S.1977, Cum.Supp.1981.

It is said in H. Ballantine on Corporations (Rev.Ed.1946) § 129, pp. 302–303:

"If a corporation is organized and carries on business without substantial capital in such a way that the corporation is likely to have no sufficient assets available to meet its debts, it is inequitable that shareholders should set up such a flimsy organization to escape personal liability. The attempt to do corporate business without providing any sufficient basis of financial responsibility to creditors is an abuse of the separate entity and will be ineffectual to exempt the shareholders from corporate debts. It is coming to be recognized as the policy of the law that shareholders should in good faith put at the risk of the business unincumbered capital reasonably adequate for its prospective liabilities. If the capital is illusory or trifling compared with the business to be done and the risks of loss, this is a ground for denying the separate entity privilege." (Footnotes omitted.)

To the same effect, see Fletcher, Cyclopedia of the Law of Private Corporations (Rev. Ed.1974, Cum.Supp.1981) § 44.1, p. 249.[3] In *Hiehle v. Torrance Millworks, Inc.*, 126 Cal. App.2d 624, 272 P.2d 780 (1954), two partners incorporated and loaned money to the corporation and contributed minor assets. The court there found that the corporation started out owing money equal to its assets. Its net worth was held to be nil. The court concluded that in such an instance it would be unjust to permit the incorporators to make use of the corporate entity to escape personal liability for its debts.

An obvious inadequacy of capital, measured by the nature and magnitude of the corporate undertaking, has, according to *Anderson v. Abbott*, 321 U.S. 349, 64 S.Ct. 531, 88 L.Ed. 793, 151 A.L.R. 1146 (1944), frequently been an important factor in cases denying stockholders their defense of limited liability. In *Minton v. Cavaney*, 56 Cal.2d 576, 15 Cal.Rptr. 641, 364 P.2d 473 (1961), it was held that owners of a corporation are personally liable when they provide inadequate capitalization and actively participate in the conduct of corporate affairs; in such case, the court disregarded the corporate entity. In the opinion by Justice Traynor, which held there had been an abuse of the corporate privilege, it was pointed out that the principles enunciated applied not only in contractual matters but in tort claims against a corporation as well. Another further interesting side of the case was that the defendant Cavaney was attorney for the corporation, acting not only as its secretary-treasurer but also directing its affairs.

In the case before us, following C & B's incorporation, the appellees borrowed $50,-000 and in turn lent it to C & B. Carl Federer testified in that regard:

"A. My wife and I borrowed it.

"Q. All right. Was that in the form of the risk capital contribution or was that in the form of a loan?

"A. It was in the form of a loan, yes."

The appellees withdrew from corporate funds $1,000 per month in repayment of the loan, upon which, at time of trial, there was still a balance owing. The account of C & B with appellant started in 1978 and according to Carl Federer in his testimony, it did

---

**3.** Fletcher, as cited, expresses the same thing in a slightly different way:

"If a corporation is organized and carries on a business without substantial capital in such a way that the corporation is likely to have no sufficient assets available to meet its debts, it is inequitable that the stockholders should set up such a flimsy organization to escape personal liability. To attempt to do corporate business without providing any sufficient basis of financial responsibility to creditors is an abuse of the separate entity and will be ineffectual to exempt the stock-

holders from corporate debts. It is coming to be recognized as the policy of the law that stockholders should in good faith put at the risk of the business unencumbered capital reasonably adequate for its prospective liabilities. If the capital is illusory or trifling compared with the business to be done and the risks of loss, this is ground for denying the separate entity privilege. It has been stated that a corporation's capitalization is a major consideration of courts in deciding whether a legitimate separate corporate entity was maintained. * * *"

not go for very long because it was not being paid, so appellant put C & B on a collect on delivery basis "for a long, long time." C & B then went defunct. There is a prima facie inference present that an injustice resulted because of the undercapitalization of C & B.

The large unpaid account of the appellant which accrued over a relatively short time indicates that cost of plumbing supplies in operating the plumbing business requires a heavy investment. The invoices of C & B and Carl Federer also point to that prima facie fact.

It is well established that even though the only purpose of incorporation is to insulate owners from personal liability for debts of the business, that alone will not warrant the piercing of the corporate veil. However, when this intent is coupled with the incorporation of a judgment-proof company, the courts have not hesitated to disregard the rule of limited liability to prevent injustice to third persons. Annotation, 63 A.L.R.2d 1051, Inadequate Capitalization as Factor in Disregard of Corporate Entity. The Later Case Service adds many more cases. In the case before us, appellees placed themselves as creditors of the corporation in a preferred position by making regular payments of $1,000 per month from C & B to themselves, while making no payment to appellant. This is prima facie unjust.

■ One may challenge the corporate entity by showing that he has been the victim of some basically unfair device by which the corporate form of business organization has been used to achieve an inequitable result. Such is the case when the assets of an insolvent corporation are used to pay off a controlling shareholder in preference to a general creditor. *Tigrett v. Pointer*, Tex. Civ.App., 580 S.W.2d 375 (1978). The indications are that C & B never was really solvent. Insolvency exists when the assets of a debtor are insufficient to pay off his debts in full. *Harle-Haas Drug Co. v. Rogers Drug Co.*, 19 Wyo. 35, 113 P. 791, 798 (1911); *Stone v. First Wyoming Bank, N. A. Lusk*, 625 F.2d 332, 349 (10th Cir. 1980). While C & B owed appellant, the evidence is that appellees were paying off themselves.

■ The annotation appearing in 46 A.L.R.3d 428, entitled Stockholder's Personal Conduct of Operations or Management of Assets as Factor Justifying Disregard of Corporate Entity, lends life to the proposition that combining this control by a shareholder with the disregard of the presence of corporate entity justifies a court in disregarding the corporate entity and fixing liability on the shareholders.

Our research indicates that the close or closed corporation made up of just one or two stockholders who usually operate the corporation and in many cases are its workers are being more closely scrutinized. This first became apparent in Wyoming when this court in *Caldwell v. Roach*, supra, announced that the corporate entity was not a sacred cow which could not be questioned, but catechizing is allowed to protect the rights of third persons. While readily recognized as a proper vehicle by which to do business and a legitimate means of avoiding personal liability, individuals sometimes forget that they must conduct the business as a corporation in order to maintain its integrity as such or there is a high risk of being subject to personal liability, as is the risk here. 46 A.L.R.3d 428, Annotation, supra and a voluminous 1981 supplement to the Annotation.[4] Husband and wife corporations are not immune. See *Harris v. Wagshal*, D.C.App., 343 A.2d 283 (1975), where husband and wife formed a corporation that was inadequately capitalized, chronically insolvent and personal and corporate funds were intermingled. In the interest of equity, the court allowed lifting of the corpo-

4. See also 17 Wyo.L.J. 63, Piercing the Corporate Veil in Wyoming by R. H. Johnson; 52 Northwestern Univ.L.Rev. 345, Symposium on the "close, closed or closely-held" corporation; 63 Kentucky Law Journal 23, Limited Liability for Corporate Shareholders: Myth or Matter-of-Fact; 51 Harv.L.Rev. 1373, The Incorporated Individual: A Study of the One-Man Company; Annotation, 1 A.L.R. 610, Disregarding Corporate Existence, supplemented by Annotation, 34 A.L.R. 597.

rate veil and held the husband and wife personally liable for a creditor's claim.

 As said in 2 Corporation Law and Practice, Hornstein, § 731, pp. 263–264 (1959):

> "Disregard of the corporate form by the participants themselves exposes them to personal liability. The courts have even spelled out the elements of disregard, to wit: failure to satisfy the minimal requirements for a corporation de facto, or failure to keep separate books and accounts, or failure to keep the corporate finances scrupulously separate from those of its shareholders or shareholder (whether an individual or a corporation), or use by both the corporation and its shareholder of a common 'department' of business so that it is difficult to unscramble the participation of each, or domination by a shareholder (whether an individual or a corporation) so complete that with respect to an alleged improper act the corporation 'had at the time no separate mind, will or existence of its own.'" (Footnotes omitted.)

Failure to maintain the requisite corporate formalities substantially increases the probability that the corporate existence will be disregarded. Conversely, maintenance of corporate formalities is often relied on by courts in refusing to hold the owners of a corporation liable. See, *Fisser v. International Bank*, 282 F.2d 231, 240 (2nd Cir. 1960), where all the formalities were followed even in the face of undercapitalization. In the case before us, the incorporators went through the motions and formalities of making the requisite filings with the secretary of state. No minutes were thereafter kept. It is not enough to say that the directors and officers met but did not keep minutes. They were husband and wife and probably talked about the business daily. There should have at least been a resolution authorizing the corporation to borrow $50,-000. We cannot find where it even went into a corporation bank account. Though the corporation is said to be defunct, we find no evidence that it was formally dissolved. Corporate monies were intermingled in the personal accounts of the stockholders. It took no more to make a prima facie case.

In the case before us, it cannot be said as a matter of law, upon this record, that there is no evidence or inferences from the evidence that the corporate veil should not be pierced. A prima facie case was presented by appellant.

Reversed and remanded for continuation of the trial in the light of the law we have set out.