Robert E. DANIELS, Plaintiff,

v.

KERR McGEE CORPORATION, and
Kerr McGee Coal Corporation,
Defendants.

No. 93–CV–1028–B.

United States District Court,
D. Wyoming.

Nov. 29, 1993.

John I. Henley, Casper, WY, for plaintiff.

Carolyn Gregg Hill, Andrews Davis Legg Bixler Milsten & Price, Oklahoma City, OK, for defendants.

### ORDER GRANTING DEFENDANT KERR McGEE CORPORATION'S MOTION FOR SUMMARY JUDGMENT

BRIMMER, District Judge.

The above-entitled matter having come before the Court upon Defendant Kerr McGee

Corporation's Motion for Summary Judgment, and the Court having reviewed the materials on file herein both in support of and in opposition to, having heard oral argument, and being fully advised in the premises, FINDS and ORDERS as follows:

### Factual Background

Plaintiff Robert E. Daniels, a Wyoming resident, suffered from a sensitivity to loud noises. He was employed at the Jacobs Ranch Mine by Kerr McGee Coal Corporation ("Coal Corporation") for approximately fifteen years. The parties do not dispute two critical facts. First, they agree that Coal Corporation is a wholly owned subsidiary of Kerr McGee Corporation ("Corporation"), the parent corporation, and second, they agree that the plaintiff was an employee of Coal Corporation, the subsidiary company.

On June 6, 1992, the plaintiff was terminated from his employment with Coal Corporation. The circumstances leading up to his termination are the subject of this lawsuit. The plaintiff has made allegations of harassment by his co-workers. Plaintiff suffered from a sensitivity to loud noises and his co-workers were aware of this fact. Nonetheless, they continuously harassed the plaintiff. On two separate occasions, their conduct caused the plaintiff to suffer a seizure. After conducting a medical examination of the plaintiff, the parent corporation's physician concluded that the plaintiff was still fit to continue his employment with the company subject to a few restrictions. The plaintiff argued that the defendant would not accommodate his necessary medical restrictions, and this culminated in his termination.

### Procedural Background

Daniels filed his complaint in this suit on July 26, 1993, naming the Corporation as the defendant. In his complaint, which was predicated on diversity jurisdiction, he alleged four contract-based claims: (1) wrongful discharge; (2) breach of his employment contract; (3) breach of the covenant of good faith and fair dealing; and (4) promissory estoppel. He also alleged that the defendant's actions were tortious under Wyoming

law because they amounted to a violation of public policy and an invasion of privacy.

On August 23, 1993, the Corporation filed a motion to dismiss pursuant to Rule 12(b)(6). In the one paragraph memorandum of law submitted with the aforesaid motion, the defendant argued that the motion was based on the fact that the plaintiff was not an employee of the Corporation.

On September 3, 1993, the plaintiff amended his complaint to name Coal Corporation as a second defendant. He did not seek to substitute Coal Corporation in place of the Corporation; he merely sought to add Coal Corporation as an additional defendant. In his memorandum in support of his motion to amend, the plaintiff argued that "Kerr McGee Corporation is essentially an alter ego of defendant [Coal Corporation], and defendant [Coal Corporation] should not now be heard to assert that plaintiff was never employed by defendant [Coal Corporation] or one of its alter egos." His motion to amend was granted by this Court on September 8, 1993.

On September 15, 1993, the Corporation filed the present motion for summary judgment. In its motion, the parent company first reiterated its argument that the plaintiff was not an employee of the parent company. It further argued that the plaintiff's reliance on the "alter ego" theory of corporate liability was misplaced, and that under the "integrated enterprise" test, which it contended was the proper test to apply in this case, it was entitled to summary judgment. The plaintiff subsequently filed an opposition to the motion for summary judgment.

### Standard of Review

"By its very terms, [the Rule 56(c)] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).

The trial court decides which facts are material as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. at 2510; *see also Carey v. United States Postal Serv.,* 812 F.2d 621, 623 (10th Cir.1987). Summary judgment may be entered "against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Carey,* 812 F.2d at 623. The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Carey,* 812 F.2d at 623. In considering a party's motion for summary judgment, the court must examine all evidence in the light most favorable to the nonmoving party. *Barber v. General Elec. Co.,* 648 F.2d 1272, 1276 n. 1 (10th Cir.1981).

### Discussion

The parties agree that the plaintiff was an employee of Coal Corporation. Thus, unless the plaintiff can establish that there is a legal theory by which the parent corporation may be held liable, then it would, by the plaintiff's own admission, be entitled to summary judgment. *See, e.g., Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.,* 456 F.Supp. 831, 838 (D.Del.1978) (noting that under ordinary circumstances, and in the absence of any proof to the contrary, a parent corporation will not be held liable for the acts of a subsidiary).

In order to overcome that hurdle, the plaintiff contends that the parent company is essentially the "alter ego" of the subsidiary and that it should therefore be liable for the actions of the subsidiary.[1] The defendant contends that under the appropriate test for assessing whether a parent corporation, as sole shareholder of a subsidiary, may be held liable for the acts of the subsidiary, the plaintiff has failed to make the necessary showing.

### A. Determining The Proper Standard

At the outset, the Court must determine the proper framework within which it will decide the corporate law issue presented by this case.

The Tenth Circuit has recently noted that there are four tests that courts have applied to determine whether a parent corporation should be held liable for the acts of a subsidiary. *See Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1362 & n. 2 (10th Cir.1993). Those tests are: (1) the "integrated enterprise" test, *see Evans v. McDonald's Corp.,* 936 F.2d 1087, 1089 (10th Cir.1991); (2) the "agency" theory, *see, e.g., Nation v. Winn–Dixie Stores, Inc.,* 567 F.Supp. 997, 1010 (N.D.Ga.1983); (3) the alter ego test, also known as "piercing the corporate veil," *see Zubik,* 384 F.2d at 272; and (4) the instrumentality test, *see, e.g., Fanfan v. Berwind Corp.,* 362 F.Supp. 793, 795 (E.D.Pa.1973). While these tests are analytically distinct and require proof of separate facts, they do share a common attribute. At their core, they all seek to determine whether, under the facts of a particular case, the parent corporation has exercised such a significant degree of control over the acts of the subsidiary that equitable principles require a court to intervene and disregard the corporate form in order to avoid an unjust result.

The defendant argues that the integrated enterprise test set forth in the *Frank* decision is controlling. The plaintiff, however,

---

1. The issue presented here can be phrased as either parent-subsidiary liability or corporation-shareholder liability. These two formulations of the issue are, however, the same. The plaintiff is asking this Court to hold the parent company, in its capacity as the sole shareholder of the subsidiary, liable in that capacity. *See, e.g., Mobil Oil Corp. v. Linear Films, Inc.,* 718 F.Supp. 260, 265–71 (D.Del.1989). This is often referred to as "piercing the corporate veil" and is simply a technique used to defeat the protective shield of limited liability that is the *sine qua non* of the corporate form. *See Anderson v. Abbott,* 321 U.S. 349, 361–62, 64 S.Ct. 531, 537, 88 L.Ed. 793 (1944) (noting that limited liability is the general rule and not the exception); *Zubik v. Zubik,* 384 F.2d 267, 272 (3d Cir.1967), *cert. denied,* 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968) (noting that disregard of the corporate form, including limited liability, is appropriate only under exceptional circumstances).

argues that the proper framework is found in the Wyoming Supreme Court's decision in *Amfac Mechanical Supply Co. v. Federer,* 645 P.2d 73 (Wyo.1982). For reasons set forth below, the Court believes that it is required to apply the *Amfac* standard in this case but that application of either standard would lead to the same result.

In *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the Supreme Court first declared the now well-established principle that a federal court exercising diversity jurisdiction must apply the substantive law that a state court sitting in that state would apply under its conflicts of law principles. *Erie* therefore appears to require this Court to apply state corporations law, and specifically, state law regarding when a court should disregard the corporate form. Thus, this Court should be guided by decisions of the Wyoming Supreme Court and not the Tenth Circuit on this point.[2]

### B. *Application in this Case*

#### 1. *Under the* Amfac *Standard*

In *Amfac,* the Wyoming Supreme Court discussed when and under what circumstances a court should "pierce the corporate veil" and hold a shareholder liable for the obligations of the corporation. *See Amfac,* 645 P.2d at 77–78. The Court relied heavily on its prior decision in *Opal Mercantile v. Tamblyn,* 616 P.2d 776, 778 (Wyo.1980). In *Tamblyn,* the Court stated that:

> [o]rdinarily, a corporation is a separate entity distinct from that of individuals comprising it. *State ex rel. Christensen v. Nugget Coal Co.,* 60 Wyo. 51, 144 P.2d 944 (1944); *Durlacher v. Frazer,* 8 Wyo. 58, 55 P. 306 (1898). This is true although all or

a majority of the stock is owned by a single individual (citations omitted). However, in an appropriate case and in furtherance of public policy or the ends of justice, the doctrine will be disregarded. *Peters Grazing Association v. Legerski,* 544 P.2d 449 (1975) ... *Caldwell v. Roach,* 44 Wyo. 319, 12 P.2d 376 (1932).... Each case involving the disregard of the separate entity doctrine must be governed by the special facts of that case....

The *Amfac* Court then went on to cite the decision of the California Supreme Court in *Arnold v. Browne,* 27 Cal.App.3d 386, 103 Cal.Rptr. 775 (1972), calling it a "useful reference in that it does set out some of the many factors which are pertinent to justifying a disregard of the corporate entity." *Amfac,* 645 P.2d at 77 (citing *Arnold,* 103 Cal.Rptr. at 781). The Wyoming Supreme Court then cited a paragraph from the *Arnold* decision, which need not be restated here, which discusses no less than eighteen factors which that court deemed to be relevant to deciding this issue. *See Amfac,* 645 P.2d at 77–78 (citing *Arnold,* 103 Cal.Rptr. at 781–82).

In the case at bar, the plaintiff cites six facts, some of which are listed in the *Amfac* case, which he believes justify disregarding the corporate form in the present case. Those facts are that: (1) there are interlocking directorates between the two entities; (2) the parent's annual report refers to the operations of the subsidiary and includes the revenue generated by the subsidiary; (3) the parent manages the benefit plan for employees of the subsidiary; (4) the two entities use the same corporate logo and share the same corporate headquarters; (5) the parent is the sole and exclusive shareholder of 100% of the

---

2. In addition to the *Erie* problem, this Court is also hesitant of applying the "integrated enterprise" test of *Frank,* as urged by the defendant, based on the language of that opinion itself.

In *Frank,* the Tenth Circuit stated that "we decline to adopt any one of these [four] tests as the *exclusive test* for use in all *employment discrimination cases* ..." *Frank,* 3 F.3d at 1362 (emphasis added). *Frank* is therefore readily distinguishable for two reasons. First, it was a federal question case brought under Title VII of the Civil Rights Act of 1964, and therefore did not address the *Erie* concerns that are present in

this case. Second, the Tenth Circuit specifically stated that it was not adopting the integrated enterprise standard as the "exclusive" test. In fact, the Court of Appeals only applied that test because the parties specifically conceded that it should apply. *See id.*

Thus, this Court does not believe that it is bound by the *Frank* decision. Nonetheless, the Court concludes that even if the *Frank* test were to be deemed controlling in this case, as the parties appear to believe based on the substance of their oral arguments, the result would still be the same.

stock of the subsidiary; and (6) the medical examination of the plaintiff which culminated in the plaintiff's termination was conducted by a doctor who was employed by the parent company. From this, the plaintiff argues that there are issues of fact regarding whether the parent could be liable for the acts of the subsidiary and therefore, summary judgment is inappropriate. This Court does not agree.

■ While it is certainly true that these facts demonstrate that there is some degree of interdependence between these two corporations, this Court does not believe that the facts adduced by the plaintiff are sufficient to overcome the strong presumption of limited liability and to survive a motion for summary judgment. This is especially true in this case since the plaintiff has conceded that he was an employee of the subsidiary and not the parent, and because the subsidiary corporation is certainly adequately capitalized, has sufficient assets and would be capable of satisfying any potential judgment that might be entered against it in this matter.[3]

The plaintiff placed special reliance on the fact that he was examined by a doctor employed by the parent corporation. He argues that there is a factual issue over the role that the doctor played with respect to the decision to terminate the plaintiff, and therefore, there is an issue over the parent company's liability. The parent, however, submitted an affidavit in support of its motion for summary judgment which explicitly states that the decision to terminate the plaintiff was made by the management of the subsidiary and that the parent had no role in that decision. This evidence thereby negates any possible finding that there is an issue of fact on this point since the defendant in effect concedes that the parent had no involvement in this matter.

Thus, under *Amfac*, the Court believes that the plaintiff's showing of the interrelation of the two entities is insufficient as a matter of law to justify disregarding the separateness of the two corporate entities. As a result, the parent company is entitled to summary judgment.

### 2. *Under the* Frank *Standard*

As noted above, even if the case is judged under the integrated enterprise standard of *Frank*, as the parties appear to believe,[4] the result is nonetheless the same as it is under the *Amfac* standard.

In *Frank*, the Tenth Circuit held that a trial court must consider four factors in order to determine whether the parent could be liable for the acts of the subsidiary. Those factors are: (1) the interrelation of operations of the two entities; (2) the centralization of control of labor relations; (3) the degree of common management; and (4) the degree of common ownership or financial control between the two entities. *See Frank*, 3 F.3d at 1362. The Court will discuss each of these inquiries in turn.

■ Under the first inquiry, the Court must consider the interrelation of the operations of the parent and the subsidiary. The Court specifically noted that "merely because a parent corporation eventually benefits from the work of its subsidiaries is not evidence of interrelated operations ..." *Id.* The plaintiff has not offered any evidence which tends to show any significant degree of interrelation between these two entities apart from the fact that they are parent and subsidiary. The mere fact that the parent's annual report mentions the subsidiary or includes its revenues in its statement of net worth does not change this conclusion.

■ The second inquiry focuses on the degree of centralized control with respect to labor relations. The *Frank* Court placed special emphasis on this factor, stating that it was an "important factor" in the decision. *Frank*, 3 F.3d at 1363 (citing *Evans*, 936 F.2d at 1090). The Court noted that the critical inquiry is "what entity made the final decisions regarding employment matters related to the [aggrieved person]?" *Frank*, 3

---

3. This last point is also confirmed by an affidavit submitted by the parent in support of its motion.

4. The plaintiff's brief in opposition to summary judgment discussed *Amfac* and argued that *Frank* was distinguishable. At oral argument, however, counsel for the plaintiff seemingly abandoned that argument and simply disputed the application of the *Frank* test to the case at bar.

F.3d at 1363 (citation omitted). To satisfy this prong of the test, it must be shown that the "parent ... control[led] the day-to-day employment decisions of the subsidiary." *Id.* (citations omitted). While the plaintiff has submitted some evidence to demonstrate that the parent managed employee benefit plans for the subsidiary, the *Frank* Court specifically concluded that evidence of this nature was of almost no probative value because it was not beyond the normal parent-subsidiary relationship for the parent to administer such a program.

The third aspect of the inquiry looks at the commonality of management of the two entities. In *Frank*, the Court held that one common manager was insufficient to establish any common management under this part of the integrated enterprise test. *Id.* at 1364 (citations omitted). In the present case, the plaintiff has offered evidence that Mr. Robert C. Scharp, who is a senior vice president of the parent, is also the president of the subsidiary. This would, without more, be insufficient under *Frank.* The plaintiff has, however, offered evidence that the entire board of directors of the subsidiary is comprised of officers of the parent. The Court concludes that the plaintiff has shown that there is some degree of common management between these two entities.

Finally, the fourth part of the analysis requires a showing that there is some common ownership or financial control by the parent over the subsidiary. While it is true that the parent in this case, as in *Frank*, is the sole shareholder of the stock of the subsidiary, this fact, standing alone "can *never* be sufficient to establish parent liability." *Frank*, 3 F.3d at 1364 (citing *Wood v. Southern Bell Tel. & Tel. Co.*, 725 F.Supp. 1244, 1249 (N.D.Ga.1989) (emphasis added)). Moreover, the Court does not believe that the mere fact that the inclusion of the revenues of the subsidiary in the parent's annual report is of any significant probative value.

Thus, this Court concludes that while there is some degree of common management between these two entities, a consideration of these four factors *in toto* leads to the conclusion that the plaintiff has failed to demonstrate that there is enough of an interrelation between these two corporations so as to overcome the strong presumption in favor or the limited liability of the parent corporation. *See Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 980–81 (4th Cir.1987). As a result, the defendant parent corporation is entitled to summary judgment under the *Frank* standard as well as under *Amfac.*

**THEREFORE,** it is

**ORDERED** that Defendant Kerr McGee Corporation's Motion for Summary Judgment be, and the same hereby is, **GRANTED.**