**KLOEFKORN–BALLARD CONSTRUC- TION AND DEVELOPMENT, INC.,**
**Appellant (Petitioner),**

v.

**NORTH BIG HORN HOSPITAL DIS- TRICT, Appellee (Respondent).**

**No. 83–234.**

Supreme Court of Wyoming.

June 13, 1984.

---

B.J. Baker of Brown, Drew, Apostolos, Massey & Sullivan, Casper, for appellant.

L.R. Garrett of Lovell, for appellee.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

BROWN, Justice.

Kloefkorn-Ballard Construction and Development, Inc., appellant (hereinafter Kloefkorn-Ballard), a Wyoming corporation, appeals the award of a construction contract by North Big Horn Hospital District, appellee (hereinafter Hospital District) to D & L Building and Remodeling, Inc. (hereinafter D & L), a Wyoming corporation. Appellant contends that D & L is a corporate device used by Knutson Construction (hereinafter Knutson), a Minnesota corporation, to evade the Wyoming preference statute.

We will affirm.

The Hospital District advertised for bids for the construction of the North Big Horn Hospital. Under the provisions of § 16–6–102, W.S.1977 (October 1982 Replacement), the Hospital District was obligated to award the contract to the responsible resident making the lowest bid if the resident's bid was not more than five percent higher than the lowest responsible nonresident bidder. D & L was the lowest bidder and was awarded the construction contract by the Hospital District. Kloefkorn-Ballard was the second lowest bidder, its bid being not more than five percent higher than D & L's bid.

Kloefkorn-Ballard protested to the board of directors of the Hospital District that D & L was not a responsible resident bidder within the meaning of the Wyoming preference statute, § 16–6–102, W.S.1977. The board granted a hearing on the question, and issued findings of fact, conclusions of law, decision and order concluding that D & L was a responsible resident bidder. Appellant then petitioned the district court for a review of the board's decision. The district court affirmed the action of the Hospital District. Kloefkorn-Ballard then appealed to this court, seeking that the following issues be resolved:

"1. Can a nonresident corporation evade the Wyoming Resident Preference Statute, Section 16–6–102, Wyoming Stat-

utes, 1977, by means of acquiring a Wyoming corporation, substantially without assets, which has been in existence for more than one (1) year and by bidding in the name of the Wyoming corporation? "2. If an undercapitalized Wyoming corporation has no ability, either financial or otherwise, to perform a contract without the joint participation of a nonresident corporation, does a joint venture or association exist at law in violation of the statutory requirement that each member of a partnership or association bidding on a project must have been a bona fide resident of the State for more than one (1) year immediately prior to bidding upon the contract? "3. Were the findings and conclusion of the Board of Directors of Appellee erroneous as a matter of law because there was no substantial evidence to support the conclusion that D & L Building & Remodeling, Inc. was a responsible contractor?"

Appellant contends that although D & L is a Wyoming corporation, it is a shell or alter ego for Knutson to avoid Wyoming's preference statute.

D & L was incorporated in June, 1980, by George Dunlap and Gary Lancaster of Gillette, Wyoming. The corporation primarily handled remodeling work and constructed residences. In October, 1982, Knutson purchased 80 percent of the shares of D & L from Dunlap and Lancaster. Before completion of the stock sale, D & L transferred all jobs and projects in progress to a new company, Lancaster Building, owned by Gary Lancaster. D & L also transferred all real estate owned by it to George Dunlap and Gary Lancaster. The only remaining assets of D & L at the time Knutson acquired control were approximately $12,-000 worth of tools and equipment. After purchasing control, Knutson did not inject capital into D & L but advanced D & L money under a promissory note, payable on demand, for $200,000.

D & L carried five people on its payroll at the time of the hearing, four of which were former Knutson employees. D & L leases office space in Gillette, Wyoming, from George Dunlap. D & L did not have a construction yard, and the tractor and tools owned by D & L were stored at Mr. Lancaster's home at the time of the hearing.

The articles of incorporation of D & L specified that the number of directors should be three at such time as there were three or more shareholders. At the time of the hearing, the board of directors had been increased to either five or six. There was conflicting testimony as to who was actually on the board of directors. Mr. Lancaster, one of D & L's directors, was unaware of the salary Mr. Madsen received as president and general manager of D & L after the Knutson purchase, nor did he know where D & L was getting money to operate. There was a written agreement between D & L and Knutson relating to estimating services for bidding on jobs.

D & L furnished a bond to appellee. The bond was indemnified by Knutson. The insurance agency in Gillette, Wyoming, which issued and countersigned the bonds, did not obtain financial information relating to D & L, testifying that it was unnecessary.

Appellee asserts that D & L is a Wyoming corporation which was incorporated June 20, 1980. Knutson Construction Company owns 80 percent of D & L stock; Lancaster and Dunlap own 20 percent. The office and place of business of D & L is Gillette, Wyoming, where its office has been located since incorporation. D & L has done business only in Wyoming. Mr. Madsen, president and general manager of D & L, has resided in Wyoming since October, 1982; he has a Wyoming driver's license, is registered to vote in Gillette, is paid by D & L, is not on Knutson's payroll, and is not an officer or director of Knutson. D & L's payroll is made in Gillette, it banks in Gillette, it purchases insurance in Gillette, all its auditing and accounting are done in Gillette, and it pays Wyoming unemployment and worker's compensation contributions. D & L bid $800,000 worth of business in 1980, and $1,100,000 in 1981

before the Knutson stock purchase. D & L has a $200,000 line of credit with Knutson. D & L also asserts that it is well qualified to build the hospital for the North Big Horn Hospital District.

Although Knutson signed D & L's bond application as an indemnitor, appellant's bond application was also signed by some of its stockholders, a common practice according to a co-owner of Kloefkorn-Ballard.

■ In an appeal from the district court's review of an agency decision, we are not bound by the conclusions reached in the district court, but we review the appeal as if it came directly from the agency. *Wyoming State Department of Education v. Barber,* Wyo., 649 P.2d 681 (1982). When reviewing the agency's decision, we cannot substitute our judgment for that of the agency as long as the agency's findings are supported by substantial evidence. *Wyoming State Department of Education v. Barber,* supra. By "substantial evidence," we are referring to relevant evidence which a reasonable mind might accept as supporting the agency's conclusion, although it means more than a mere scintilla of evidence. *Wyoming State Department of Education v. Barber,* supra; and *Board of Trustees, Laramie County School District No. 1 v. Spiegel,* Wyo., 549 P.2d 1161 (1976).

As stated above, the board of directors of the Hospital District found that D & L was a responsible resident bidder and, therefore, the preference statute was not violated. The Wyoming preference statute, § 16–6–102, W.S.1977, provides:

"Whenever a contract is let by the state, any department thereof, * * * for the erection, construction, alteration or repair of any public building, * * * the contract shall be let, if advertisement for bids is not required, to a resident of the state. If advertisement for bids is required the contract shall be let to the responsible resident making the lowest bid if the resident's bid is not more than five percent (5%) higher than that of the lowest responsible nonresident bidder."

"Resident" is defined in § 16–6–101(a)(i), W.S.1977 (October 1982 Replacement), as:

"(A) Any person who has been a bona fide resident of the state for one (1) year or more immediately prior to bidding upon the contract;

"(B) A partnership or association, each member of which has been a bona fide resident of the state for one (1) year or more immediately prior to bidding upon the contract;

"(C) A corporation which has been organized under the laws of the state and has been in existence in the state for one (1) year or more immediately prior to bidding upon the contract and which has its principal office and place of business within the state."

■ Therefore, four elements must exist before a corporation qualifies as a resident under this statute and they are that:

1. The corporation has been organized under the laws of Wyoming;
2. The corporation has been in existence in Wyoming for one year or more prior to bidding;
3. Its principal office must be in Wyoming; and
4. Its principal place of business must be within Wyoming.

■ Neither of the parties involved in this appeal contest the fact that D & L is a Wyoming corporation organized under Wyoming law that has been in existence for one year or more, or that D & L has its principal office and place of business in Wyoming. We, therefore, find that D & L is a resident Wyoming corporation. Appellant contends, however, that D & L is a corporate device or instrumentality of Knutson and asks us to disregard the corporate entity of D & L, which would make it ineligible to receive the five percent preference under the statute. Therefore, the issue as we see it is whether D & L is a responsible bidder.

We cannot locate any Wyoming cases directly on point; however, the cases dealing with piercing the corporate veil or whether a corporation is an alter ego will

be useful in determining this question. In *AMFAC Mechanical Supply Co. v. Federer*, Wyo., 645 P.2d 73 (1982), we discussed some of the factors pertinent to justify the disregard of a corporate entity:

1. Whether a corporation is truly a separate entity;
2. Commingling of funds and other assets;
3. Failure to segregate funds of the separate entities;
4. Failure to maintain adequate corporate records or maintain minutes;
5. Failure to adequately capitalize a corporation;
6. The absence of corporate assets and undercapitalization;
7. The use of a corporation as a mere shell, instrumentality or conduit of an individual or another corporation;
8. The disregard of legal formalities and the failure to maintain arm's length relationships among related entities;
9. The use of the corporate entity to procure labor, services or merchandise for another person or entity.

"For a corporation to be accorded treatment as a separate entity, it must exist and function as such and not be the alter ego of the person [or corporation] owning and controlling it and cannot be used or ignored just to fit the convenience of the individual [or corporation]. * * *" *AMFAC Mechanical Supply Co. v. Federer*, supra, at 79.

■ Ordinarily, a corporation is a separate entity distinct from the individuals comprising it. *State ex rel. Christensen v. Nugget Coal Co.*, 60 Wyo. 51, 144 P.2d 944 (1944). This is true even though a majority of the corporate stock is owned by a single individual. *W.D. Miller Lumber Corporation v. Miller*, 225 Or. 427, 357 P.2d 503, 100 A.L.R.2d 376 (1960); and *Durlacher v. Frazer*, 8 Wyo. 58, 55 P. 306 (1898). Before a corporation's acts will be considered to be those of a specific stockholder, it must be made to appear that the corporation is not only influenced and governed by that stockholder, but that there is such a

unity of interest and ownership that the individuality or separateness of the corporation and stockholder has ceased. See *AMFAC Mechanical Supply Co. v. Federer*, supra; and *Arnold v. Browne*, 27 Cal. App.3d 386, 103 Cal.Rptr. 775 (1972). The facts of each case involving the disregard of a corporate entity must lead us to the conclusion that adherence to the separate existence of the corporation would sanction a fraud or promote injustice. See *AMFAC Mechanical Supply Co. v. Federer*, supra; and *Arnold v. Browne*, supra.

■ Our review of the record in this appeal persuades us that the Hospital District's finding that D & L is a responsible resident bidder, separate and distinct from Knutson, is supported by substantial evidence.

D & L does not have an overabundance of assets for a corporation bidding on multi-million dollar projects. However, the testimony indicates that it has the necessary bonding capacity; that it has funds available by the note from Knutson, its parent corporation; that it is not unusual for equipment to be leased for these types of construction contracts and for personnel to be hired in the area affected by the contract; and that its assets were increased at the time of the hearing to $47,000, plus $10,000 cash.

■ The note from Knutson to D & L for $200,000 is in writing and requires D & L to pay interest. We do not consider this to be commingling of funds but an arm's length transaction.

■ We can find no impropriety in the fact that D & L has several people on its payroll who were once employees of Knutson. President Madsen testified that he is not paid by Knutson and does not receive orders from or answer to Knutson. Madsen also testified that D & L has the men and expertise necessary to build this hospital.

We believe that D & L and Knutson have maintained a separate existence; that D & L is not governed by Knutson; and that

the recognition of D & L as a separate corporate entity does not sanction a fraud or promote injustice. Additionally, if we were to rule that Knutson was merely using D & L as an instrumentality, it would make it very difficult for viable Wyoming corporations to sell a majority of their stock to an out-of-state corporation. We do not think this would be in the public interest.

Our discussion has effectively answered the issues proposed by appellant. Affirmed.