**DEPARTMENT OF EMPLOYMENT, LABOR STANDARDS DIVISION, State of Wyoming, Appellant,**

v.

**ROBERTS CONSTRUCTION COMPANY, Appellee.**

No. 92–26.

Supreme Court of Wyoming.

Nov. 20, 1992.

---

Joseph B. Meyer, Atty. Gen., Michael L. Hubbard, Sr. Asst. Atty. Gen., and Robert L. Lanter, Asst. Atty. Gen., for appellant.

George E. Powers, Jr. of Godfrey & Sundahl, Cheyenne, for appellee.

Before THOMAS, CARDINE, URBIGKIT * and GOLDEN, JJ., and BROWN, J. (Retired).

BROWN, Justice (Retired).

The trial court set aside and reversed a decision by appellant, the Department of Employment, Labor Standards Division, State of Wyoming (Department), which had revoked the certificate of residency possessed by appellee Roberts Construction Company, Inc. (Roberts).

Appellant argues a single issue:

Was there sufficient evidence to support the Division of Labor Standards' decision that a certified resident contractor was using its certificate of residency primarily as a device to obtain benefits of residency for a nonresident contractor, in violation of W.S. § 16–6–102(d).

We affirm.

In 1984, all of the stock in Roberts Construction Company was purchased by McCormick, Inc. In 1987, Roberts received from the Department a certificate of resi-

* Chief Justice at time of oral argument.

dency status. The certificate of residency allowed Roberts to bid public contract projects as a resident contractor and thus enjoy a five percent preference on its bids over those of nonresident contractors.

This dispute arose when the owner of Nucor Drilling, Inc., filed an oral complaint with the Department complaining about the residency status of Roberts. The complaint was formally made in writing and received by the Department on March 14, 1991.

At the time of the complaint by Nucor Drilling, Inc., Roberts was the low bidder on two construction projects planned by the Department of Environmental Quality. Nucor Drilling, Inc., was the second lowest bidder on these projects, its bid being $115,460 higher than Roberts' bid.

As a result of the complaint by Nucor Drilling, Inc., David Crowlie, a compliance officer with the Department, did an on-site investigation of Roberts' business office in Sundance, Wyoming. The on-site inspection disclosed material which caused Crowlie to believe that Roberts was using the certificate of residency primarily as a device to obtain benefits of residency for its nonresident corporate parent, McCormick, Inc. (McCormick), a North Dakota corporation. David Simonton, Compliance Supervisor for the Department of Labor Standards, wrote a letter to Roberts on March 25, 1991, informing Roberts of the residency certification audit and his preliminary findings. In his letter, David Simonton requested that Roberts respond to the preliminary findings and produce documentation to demonstrate that it was not in fact using its residency certificate primarily as a device to obtain the residency five percent bid preference for McCormick, a nonresident.

Roberts responded to David Simonton's March 25, 1991 letter with a letter from its attorney dated April 9, 1991. After reviewing Roberts' response, Mr. Simonton concluded that Roberts was in violation of Wyo.Stat. § 16–6–102(d) (1990) and was using its certificate of residency primarily as a device to obtain benefits of residency for McCormick, a nonresident. Mr. Simonton

revoked Roberts' resident contractor certificate in his April 16, 1991 letter.

Roberts requested a hearing to review the decertification decision as provided by Chapter XI, Section 10(a) of the Departments' Rules of Practice and Procedure. The hearing was held on May 17, 1991, with the Commissioner of Labor, Michael J. Sullivan, sitting as hearing officer. On May 30, 1991, the Commissioner issued his determination and order upholding the Department's decision to revoke Roberts' residency certification.

Roberts filed a petition for review on June 3, 1991. Roberts' motion for stay of enforcement of the administrative decision was denied on June 26, 1991, by the district court. The contracts were then awarded to Nucor Drilling, Inc., at a cost of an additional $115,460 to the state. On December 13, 1991, the district court reversed the Commissioner of Labor's order revoking Roberts' residency certification. The district court held that the Department's decision to revoke Roberts' certificate of residency was unsupported by substantial evidence, and, therefore, must be set aside in accordance with Wyo.Stat. § 16–3–114(c)(ii)(E) (1990) of the Administrative Procedures Act. The Department filed its notice of appeal to the supreme court on December 24, 1989.

The Wyoming Administrative Procedures Act sets the legislative standard for reviewing an administrative decision. Wyo. Stat. § 16–3–114(c) (1990) provides in pertinent part:

> To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determination, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>
> (i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

■ This court has developed further standards of review with respect to agency decisions that tilt in favor of the agency determination. When reviewing an agency decision, we must examine the entire record as if it came directly to the court from the agency. The district court's determination should not be afforded any deference. *Mekss v. Wyoming Girls' School, State of Wyoming*, 813 P.2d 185, 200–01 (Wyo. 1991). After a careful review of the record, the court must determine whether the agency's findings were supported by substantial evidence. *Id.* at 200.

■ Substantial evidence is defined by this court as "relevant evidence which a reasonable mind might accept in support of the conclusions of the agency." *Dougherty v. J.W. Williams, Inc.*, 820 P.2d 553, 555 (Wyo.1991) (quoting *Trout v. Wyoming Oil and Gas Conservation Commission*, 721 P.2d 1047, 1050 (Wyo.1986)). The substantial evidence standard also requires that there be more than a scintilla of evidence. *Knight v. Environmental Quality Council of State of Wyoming*, 805 P.2d 268, 274 (Wyo.1991). It is not required that the

proof attain such a degree of certainty as to support only one conclusion to the exclusion of all others. *Marathon Battery Company v. Kilpatrick*, 418 P.2d 900, 917 (Okla.1965). Once the measure of evidence has surpassed the scintilla threshold, the possibility of drawing two inconsistent conclusions from the entire record does not mean that the conclusion drawn by the administrative agency is not supported by substantial evidence. *Knight*, 805 P.2d at 274. Even where this court, after reviewing the record, arrives at a different conclusion, the court cannot substitute its judgment for that of the agency's as long as the agency's conclusion is supported by substantial evidence. *Kloefkorn–Ballard Construction and Development, Inc. v. North Big Horn Hospital District*, 683 P.2d 656, 660 (Wyo.1984).

■ Wyoming Rules of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence can be either direct or circumstantial in nature. Circumstantial evidence, like direct evidence, is relevant if it tends to prove or disprove some matter in issue or to make a fact in issue more or less probable. *Jozen v. State*, 746 P.2d 1279, 1283 (Wyo.1987); *Petricevich v. Salmon River Canal Company*, 92 Idaho 865, 452 P.2d 362 (1969).

In developing our standards of review we have used some imprecise terms such as "scintilla of evidence," "weight of the evidence," "great weight of evidence," "overwhelming weight of evidence," and "substantial evidence." How these terms are applied often depends on the context in which they are used, but more likely, as a practical matter, it depends on "the eye of the beholder."[1] To paraphrase the late

---

1. The court's use of a "substantial evidence" review of agency actions was developed by Justice Blume in *Howard v. Lindmier*, 67 Wyo. 78, 214 P.2d 737 (1950). The court first stated the limited review provided under "substantial evidence" and then defined the concept in this manner: "[T]he term 'substantial evidence' does not include the idea of weight of evidence, although it is more than a mere scintilla and

means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 740. *See also Clements v. Board of Trustees of Sheridan County School District No. 2*, 585 P.2d 197, 202 (Wyo.1978).

Variations of the same language have appeared in other cases. In *Laramie River Conservation Council v. Industrial Siting Council*, 588

United States Supreme Court Justice Potter Stewart [pornography case], substantial evidence is difficult to define, but one knows it is not present when one does not see it.

The administrative hearing officer, Michael J. Sullivan, wrote voluminously in support of his "Determination and Order." He purported to make seventy-one findings of fact; however, sixty-three of these entries are really a summary of the evidence. The so-called conclusions of law mostly state the parties' contentions and set out some findings of fact. Although the hearing officer did not actually make conclusions of law as required by the statute, we can glean from his "Determination and Order" that he concluded that Roberts was using the certificate of residency primarily as a device to obtain benefits of residency for a nonresident. Most likely, the hearing examiner's findings of fact and conclusions of law do not satisfy the requirements of Wyo.Stat. § 16–3–110 (Wyo.1990).[2] However, we will decide this case on the merits.

In the first paragraph of his "Determination and Order," the hearing officer, Michael J. Sullivan, said, "The decertification was based on a violation of Wyoming Statute 16–6–102(d)." This statute provides in pertinent part:

(d) The department of employment shall deny or revoke a certificate of residency even if the applicant or certificate

holder is in compliance with W.S. 16–6–101(a)(i), if the department finds the applicant or certificate holder will use or is using the certificate of residency primarily as a device to obtain benefits of residency for a nonresident. Evidence that a certificate might be or is being utilized as such a device includes, but is not limited to, the following none of which create a presumption that the certificate is being so utilized:

(i) The applicant or certificate holder:

(A) Contracts with a nonresident parent corporation, partnership, individual or any subsidiary thereof for any goods or services;

(B) Utilizes equipment, supplies and materials from any nonresident source unless they are not economically available from resident sources.

Section 16–6–102(d) was added by 1989 Wyo.Sess.Laws, ch. 156 after the decision of this court in *Kloefkorn–Ballard Construction*, 683 P.2d 656.

In that portion of the hearing officer's "Determination and Order" at paragraph 19, he states: "The Objector [Roberts] has a special relationship with its parent corporation [McCormick]. We do know from the record that the objector has the following business activities with the parent corporation[.]" He then lists eight of these activi-

P.2d 1241, 1249 (Wyo.1978), the court modified the language:
In applying [the substantial evidence] standard for purposes of review we recognize that it may be less than the weight of the evidence, but it cannot clearly be contrary to the overwhelming weight of the evidence. More is required than a mere scintilla of evidence or suspicion of existence of a fact to be established.
*See also Mountain Fuel Supply Co. v. Wyoming Public Service Commission of Wyoming*, 662 P.2d 878, 882 (Wyo.1983).
In *Burlington Northern Railroad Co. v. Public Service Commission of Wyoming*, 698 P.2d 1135, 1138–39, (Wyo.1985) (citations omitted), the court phrased the standard in this way:
Substantial evidence has been defined "as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Substantial evidence may indeed be less than the great weight of evidence, but is more than a mere scintilla of evidence.

The author of the opinion in *Burlington Northern Railroad Co.* did not contribute anything to a better understanding of the illusive term "substantial evidence." In fact, his contribution was counterproductive and only added another slippery term. A Philadelphia lawyer would be hard-pressed to sort out what this court has said about "substantial evidence."

2. An agency's duty to support its action with sufficient factual findings is set out in Wyo.Stat. § 16–3–110, which reads in pertinent part:
A final decision or order adverse to a party in a contested case shall be in writing or dictated into the record. The final decision shall include findings of fact and conclusions of law separately stated. Findings of fact if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings.

ties.[3] Paragraph 19 of the "Determination and Order" is in some respects a summary of the factors that the agency considered in decertifying Roberts. In Finding No. 35, the hearing examiner stated:

Witness [Labor Standards Supervisor David Simonton] testified that any one fact does not constitute a violation of Wyoming law but the combination of these factors does give the appearance of gaining benefits for a nonresident (see case file letter of April 16, 1991).

Simonton also testified:

There are some of those factors that I think if that one factor alone, say, the commingling of funds issue, in my opinion, if that's all we had, that might be enough to decertify a corporation.

■ We think it fair to say that the agency considered multiple factors in decertifying Roberts as a resident. We do not believe, however, that the agency's Findings of Fact and Conclusions of Law are supported by substantial evidence.

**3.** Paragraph 19 of the Determination and Order reads in pertinent part:

(a) parent corporation estimator does all bid estimates on public works projects for the Objector. Even though he is paid by the Objector, his services as an estimator are provided to no other contractor except the Objector and the parent corporation. There were no payroll documents to substantiate the payment of his salary or benefits by the Objector.

(b) The assertion by the Public Body that the Objector and the parent corporation were jointly using an out-of-state bank was based on the April 2, 1991 minutes of the Board of Directors. The evidence refuting this issue was not submitted during the investigation because the error in the 1990 Board minutes was not noted until April 1, 1991 which is after the fact. Also, the Affidavit of Margaret Mary Yanez does state that the Objector currently has no checking account which leaves the past activities unclear to the hearing officer.

(c) Objector has contracts with the parent corporation for goods and services to be shared and used such as equipment, yard facilities, preparation of bids, personnel Wyoming project information, and some administrative tasks.

(d) The agreement to transfer excess funds to the parent corporation each month demonstrates a failure to adequately capitalize the resident corporation regardless of the terms of the agreement.

We will not discuss all of the numerous findings of fact and conclusions set out in the hearing officer's "Determination and Order," but only those that seemed most significant to the agency.

The hearing examiner assumed that Roberts improperly maintained a joint bank account with its parent corporation at the American National Bank of St. Paul, Minnesota. The evidence is to the contrary. Alan Roberts testified that Roberts had never maintained a checking account at American National Bank of St. Paul, Minnesota. Further, the minutes of the Annual Meeting of the Board of Directors of Roberts Construction held on April 1, 1991, reflected that any prior Board of Directors' minutes suggesting a bank account in St. Paul, Minnesota, was in error. Margaret Mary Yanez, Vice President of American National Bank, in an affidavit, stated: "Roberts Construction Company maintains no checking accounts, savings account, or other deposits with American

(e) The Objector failed to provide payroll documents, banking statements, purchase of goods or services required in each project, accounts receivable documents, bonding documents, prequalification package for projects, and documents to show that the Objector does in fact stand separate from the parent corporation. This lack of documentation of the above activities demonstrates a failure to maintain adequate corporation records. Even the April 1, 1991 corporation minutes were prepared in the North Dakota office since they were faxed to Wyoming.

(f) The Objector has failed to demonstrate and maintain an arm's length distance from its parent corporation. In each business activity discussed, the Objector continues to use its parent corporation for each and every endeavor discussed in the Findings of Fact and the Conclusion of Law. The very nature of the excess funds agreement allows a commingling of excess money made on each and every Wyoming project with the parent corporation.

(g) The Objector has had no general construction equipment evidenced by equipment lease agreements with the parent corporation or real property located in Wyoming evidenced by the yard lease agreement and the office rental exhibit since its acquisition by the parent corporation in 1984.

(h) Since the Objector testified that it does not work in the field operation for each project, the parent corporation's supervisors must control the public works projects.

National Bank and Trust Company, nor has it ever maintained such deposits." All of this uncontradicted evidence clearly established that Roberts did not, and never had, maintained an account at the American National Bank in St. Paul, Minnesota. Mr. Sullivan impermissibly speculates, in the face of evidence to the contrary, that Roberts' past activities may have included maintaining a joint out-of-state bank account with its parent corporation.

The hearing officer was concerned about Roberts leasing equipment from the parent company. In Paragraph 8 of the Department's conclusions, the hearing officer noted that Roberts submitted documents pertaining to the purchase, as opposed to leasing equipment from the parent company, together with checks showing four separate equipment transactions. The hearing officer found this evidence insufficient, noting that "it failed to show the reverse side of each check reflecting deposit or cash." The hearing officer apparently ignored the uncontroverted testimony of Alan Roberts that the checks were used to purchase equipment. Roberts presented evidence that the equipment it did lease from its parent corporation was at favorable rates. Mr. Sims and Mr. Olsen, both presidents of resident construction companies, testified that the rates Roberts received on leased equipment from McCormick were very favorable. Furthermore, these two individuals testified regarding the difficulty in leasing equipment from Wyoming suppliers. Mr. Roberts substantiated the testimony of both Mr. Sims and Mr. Olsen by stating, in his experience, the rates Roberts received from McCormick, were very favorable. Mr. Simonton, of the Department, agreed that the rates Roberts received from McCormick, were more favorable than those available within the state of Wyoming. In his findings, Mr. Sullivan complained that no other supplier rates were submitted for comparison. However, the testimony regarding the favorable rates came from individuals knowledgeable about construction lease equipment and rates. The Department did not produce evidence to contradict the testimony elicited at the hearing. Furthermore, Mr. Sulli-

van complains that no documentation or testimony was presented regarding McCormick renting or leasing equipment to other contractors. No evidence or testimony was presented to establish that these lease agreements were improper or contrary to law. This court found that it was not unusual for a contractor to lease equipment from a parent corporation. *Kloefkorn–Ballard Construction*, 683 P.2d at 661. Roberts' equipment leases from its nonresident source were at rates more economically advantageous than were available in Wyoming. It does not seem reasonable to conclude that Roberts was not in compliance with Wyo.Stat. § 16–6–102(d)(i)(B).

Mr. Sullivan found that Roberts maintains contracts with its parent corporation for goods and services including "equipment, yard facilities, preparation of bids, personnel, Wyoming project information, and some administrative tasks." The evidence presented at the hearing regarding any transactions for goods and services between Roberts and its parent corporation supports a conclusion that such transactions were conducted at an arm's length. While Roberts does lease equipment from its parent corporation, it does so because it receives favorable rates which it would not receive in Wyoming. Roberts does lease yard facilities to store the leased equipment; however, the yard facilities leased by Roberts are leased from entities not associated with Roberts' parent corporation. All of the yard facilities are leased strictly for purposes of Roberts' business in Wyoming. No evidence was presented that Roberts' parent corporation shared its Wyoming yard facilities.

In Paragraph Nos. 9 and 19(a) of the Department's Conclusions of Law, Mr. Sullivan found that Roberts used a McCormick estimator when preparing bids on public projects. Roberts hired and paid the estimator for part-time services. Alan Roberts specifically stated that he knew of no such part-time estimator service available in Wyoming. Mr. Sullivan complains that no evidence was produced to "collaborate" [sic] Mr. Roberts' testimony from the other con-

tractor witnesses. Mr. Olsen and Mr. Sims, both owners of construction companies in Wyoming, do their own estimating work. Further, Mr. Sullivan complains that the estimator services employed by Roberts from its parent corporation were not available to other contractors. Mr. Sullivan states that no payroll documents to substantiate the payment of the estimator's salary or benefits by Roberts were admitted into evidence. However, Alan Roberts testified that the estimator he hired, Don Earl, was paid a salary and other benefits by Roberts. No testimony or evidence was presented by the Department rebutting Mr. Roberts' testimony. His testimony was unchallenged and must be accepted as true.

In Paragraph Nos. 14 and 19(h) of the Department's Conclusions of Law, Mr. Sullivan finds that Roberts used supervisory personnel from its parent corporation to manage and control its field operations. No evidence in the record supports this conclusion. Alan Roberts testified that he controls all aspects of the business, including any supervisors he employs for such projects. While a number of the supervisors that are or were employed by Roberts were, at one time, employed by McCormick, the evidence indicates that Roberts subsequently employed and controlled the supervisors.

Mr. Sullivan also raises concerns over a loan agreement between Roberts and McCormick Roberts had loaned its parent corporation money at an interest rate of at least eleven percent (11%) per annum. In Paragraph No. 15, Mr. Sullivan complains that no documentation or evidence was presented at the hearing regarding how the loan agreement actually worked between Roberts and McCormick and where McCormick, kept the funds loaned from Roberts. Mr. Sullivan concluded that the parent corporation would have to be gaining from such an agreement and that the transfer of funds from Roberts to its parent corporation demonstrated a failure to adequately capitalize. To the contrary, Roberts is a financially sound business. Furthermore, this loan agreement, which carried interest, between Roberts and McCormick represents an arm's-length transaction. We have previously said that loan agreements which carry interest between a construction company and its nonresident parent were arm's-length transactions. *Kloefkorn–Ballard Construction,* 683 P.2d at 661.

The Department scatter-gunned numerous complaints against Roberts as reflected by the numerous findings of fact and conclusions of law. We have addressed the matters that seemed most important to the hearing examiner such as the factors set out in Wyo.Stat. § 16–6–102(d)(i)(A) and (B) and commingling of assets. With respect to these factors and others not addressed, there was, in some instances, a disregard of uncontradicted evidence, drawing unwarranted conclusions from facts found and unsubstantial evidence to support the conclusions drawn.

We affirm the determination by the district court.