2001 WY 87

**John McTIERNAN and Donna Dubrow,**
**Appellants (Respondents),**

v.

**Sam J. SCOTT and Mona J. Scott,**
**Appellees (Petitioners).**

No. 00–203.

Supreme Court of Wyoming.

Sept. 20, 2001.

Kim D. Cannon and Anthony T. Wendtland of Davis & Cannon, Sheridan, WY, Representing Appellant: Argument by Mr. Cannon.

Tom C. Toner of Yonkee & Toner, Sheridan, WY, Representing Appellees. Argument by Mr. Toner.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE and VOIGT, JJ.

HILL, Justice.

[¶ 1] John McTiernan and Donna Dubrow (collectively McTiernan) filed a petition with the Board of Control (Board) seeking an order that Sam and Mona Scott (the Scotts) had abandoned a portion of their water rights. On remand from our decision in *Scott v. McTiernan*, 974 P.2d 966 (Wyo.1999) (*Scott I*) for additional findings of fact, the Board concluded that the Scotts had abandoned 14.8 acres of the 28.8 acre Shallcross property and ordered the Scotts to file a petition for a change of the point of diversion and means of conveyance with the Board. McTiernan appeals from a district court order finding the Board's decision unsupported by substantial evidence and, after a review of the record, concluding that the Scotts had abandoned 9.2 acres. McTiernan also challenges the district court's conclusion that the Board did not have the authority to order Scott to file a petition for a change in point of diversion and means of conveyance. We affirm and remand to the Board for further proceedings.

[¶ 2] McTiernan offers two issues for review:

1. Are the Board's Findings and Conclusions on the Shallcross lands sufficiently articulated and supported by substantial evidence?

2. Does the Board of Control have the authority, in support of this decision, to require Scott, the owner of a portion of the lands under the #3 Priority, to clarify the point of diversion(s) and the means of conveyance under the #3 Priority?

The Scotts agree there are two issues:

1. Is the Board's conclusion that only 14.0 acres of the Shallcross property were irrigated in the five years immediately preceding the filing of the abandonment petition supported by substantial evidence and sufficiently detailed findings of fact?

2. Was the Board of Control required to make findings of fact justifying its decision to require Scotts to file a petition for change of point of diversion and means of conveyance for their water right given that the points of diversion and means of conveyance of that water right were changed before 1965 when the McTiernan and Scott lands were owned by a common owner?

**Procedural History and Factual Background**

[¶ 3] The Scotts and McTiernan are adjoining landowners whose properties were once owned in common. Both parties hold water rights in Smith Creek to irrigate the respective properties. The Scotts' water right is part of the John Ross Appropriation, which is a territorial water right with a priority date of May 1882 and is the number three priority on Smith Creek. McTiernan holds the number four priority on Smith Creek. *Scott I*, 974 P.2d at 968–69.

[¶ 4] In 1996, McTiernan filed a petition with the Board for a declaration of abandonment of the Scotts' John Ross Appropriation. The Scotts' appropriation irrigated two separate parcels of land: (1) Tracts 3 and 4 north of Smith Creek and (2) the Shallcross property. *Id.* In the current proceeding, our only concern is with the disposition of the Shallcross property. After a contested case hearing on the petition held in the summer of 1997, the Board concluded that the Scotts had abandoned all but 14.1 acres of the 28.8 acres contained within the Shallcross proper-

ty. The Scotts appealed the decision to the district court.

[¶ 5]  In *Scott I,* we considered the Scotts' appeal of the Board's decision on certification from the district court. We held that the Board's factual findings regarding the actual acreage irrigated on the Shallcross property were insufficient and, accordingly, we remanded the matter to the Board for proper fact-finding proceedings. While our review of the Board's decision regarding the Shallcross property in *Scott I* was rather lengthy, it is necessary for us to quote that discussion in its entirety in order to properly set forth the context of the current dispute and to facilitate our review of the Board's decision on remand and the district court's subsequent reversal:

> The Scotts maintain that the board's conclusion that only 14.1 acres of the Shallcross property were irrigated during the five years immediately preceding McTiernan's filing of the abandonment petition was not supported by substantial evidence or by sufficiently detailed findings of fact. McTiernan argues that sufficient evidence and adequate findings of facts supported the board's determination. We agree with the Scotts that the board's findings of fact concerning the Shallcross property were inadequate.
>
> The Scotts claimed that they irrigated twenty-five acres of the Shallcross property in 1996. McTiernan conceded that the Scotts had irrigated three acres of the Shallcross property. The board addressed the Shallcross property in finding of fact number 23. That finding stated in pertinent part:
>
>> SW¼ NE¼ of Section 24, Township 57 North, Range 87 West (Shallcross property):
>>
>> Bruce Barton, a McTiernan witness, testified at the public hearing that he observed irrigation in the SW¼ NE¼ of Section 24, Township 57 North, Range 87 West, shown as 3.0 acres in green on Exhibit No. 30 submitted as evidence at the public hearing. Robert Mullinax, John Dahlke and Roy Powers testified at the public hearing that they observed the "big gun" operating on the Shall-

cross parcel in different locations which total an additional 11.1 acres of irrigation, shown on Exhibits X–3 and 44 submitted as evidence at the public hearing.

The board accordingly concluded that only 14.1 acres of the Shallcross property had been irrigated, and it ruled that the Scotts abandoned the remainder of the water right.

The board relied on the testimony of Robert Mullinax, John Dahlke, and Roy Powers, together with Exhibits X–3 and 44, to justify its determination that the Scotts had irrigated only 11.1 acres in addition to the three acres conceded by McTiernan. Exhibits X–3 and 44 are maps which depict the Shallcross property.

Mullinax was an irrigation equipment contractor who visited the Scotts' property around August 15, 1996, to give them an estimate for installing an irrigation pipeline. He testified that he saw a big gun sprinkler operating on the Shallcross property north of the Smith Creek subdivision access road. He drew a circle on Exhibit X–3 to show the area where he saw the sprinkler operating. Mullinax testified that he also saw irrigation pipe laid out on the west side of the big gun sprinkler. He stated that a big gun sprinkler waters a circular area with a 130–foot radius. Mullinax hypothesized that the big gun sprinkler could, therefore, water approximately three-quarters of an acre on each set. [Footnote 3]

Dahlke, a hydrographer commissioner for the board, also testified at the hearing. In July 1996, he observed a big gun sprinkler operating on the Shallcross property both north and south of the subdivision road. Dahlke drew six circles on Exhibit 44 to show where he saw the sprinkler operating. He went on to state that he observed "a minimum of seven or eight" acres of the Shallcross property being irrigated in 1996.

Powers owned land which neighbored the Scotts' land, and he occasionally traveled on the subdivision road through the Shallcross property. He testified that, in 1996, he saw the Scotts operating the big gun sprinkler on the Shallcross property

south of the subdivision road. Powers marked Exhibit 44 to show the location of the big gun sprinkler.

The appellees [McTiernan] argue that the board's conclusion that the Scotts irrigated 11.1 acres can be extrapolated from Mullinax's, Dahlke's, and Powers' testimony. The board claims that it accepted Sam Scott's testimony that he made nine sets with the big gun sprinkler during the 1996 irrigation season. It then used Mullinax's testimony that the big gun sprinkler watered a circular area with a radius of 130–feet to calculate a total acreage of 10.98 acres, [Footnote 4] or, as the board states, "approximately 11.1 acres."

The board's argument is obviously an attempt to justify its decision in hindsight. In its findings of fact, the board did not state that it relied on Sam Scott's testimony to support its conclusion that 11.1 acres had been irrigated. Furthermore, if it had truly used this rationale to reach its conclusion, it would have determined that Scott had irrigated 10.98 or, if it had rounded the number up, 11.0 acres. The board's calculation simply does not support its conclusion that the Scotts irrigated an additional 11.1 acres of the Shallcross property.

McTiernan takes a different approach to justify the board's conclusion. McTiernan argues that the 11.1 acre conclusion can be derived by using Mullinax's statement that each big gun set covers approximately three-quarters of an acre and taking that figure times twelve to fourteen sets. McTiernan does not explain the source of its twelve-to fourteen-set figure, and no such figure is readily discernable from Mullinax's, Dahlke's, or Powers' testimony. We cannot, therefore, accept McTiernan's rationale to justify the board's finding.

The appellees [McTiernan] have not convinced us that the board's factual findings in this case are sufficient. Furthermore, "a litigant's brief or oral argument is no substitute for a proper agency decision." [*Schulthess v. Carollo*, 832 P.2d 552, 559 (Wyo.1992)]. There may be a sufficient factual basis for the board's determination that the Scotts irrigated only 11.1 acres of the Shallcross property in addition to the three acres conceded by McTiernan; however, that factual basis was not included in the formal findings of fact. We, therefore, remand this case with directions that the board make additional findings of fact concerning the Shallcross property. [*Billings v. Wyoming State Board of Outfitters and Professional Guides*, 837 P.2d 84, 86 (Wyo. 1992)].

*Scott,* 974 P.2d at 971–973. Included in our discussion of the Shallcross property in the *Scott I* opinion, and noted in the quote above, were two footnotes that are relevant to the current proceedings:

[Footnote 3] According to our calculations, a sprinkler which watered a circular area with a 130 foot radius would actually water 1.219 acres rather than three-quarters of an acre per set. We reached this conclusion as follows: Area of a circle = pi (3.1416) multiplied by the radius squared. In this case, we have: 3.1416 times 130 feet squared = 3.1416 times 16,900 = 53,093 divided by the number of square feet in an acre (43,560) = 1.219 acres per set.

[Footnote 4] The irrigated area may be calculated as follows: Area of a circle = pi (3.1416) multiplied by the radius squared. In this case, we have: 3.1416 times 130 feet squared = 3.1416 times 16,900 = 53,093 divided by the number of square feet in an acre (43,560) = 1.219 acres per set times 9 sets = 10.97 acres. We assume that the difference between our calculation and the board's calculation is due to differences in rounding.

*Scott,* 974 P.2d at 972 n. 3 and n. 4.

[¶ 6] On remand, the Board reconsidered the evidence produced during the original hearing. The Board made the following two new findings of fact on remand relevant to the Shallcross property:

THAT Sam Scott testified at the public hearing that he made nine (9) sets with the big gun sprinkler during the 1996 irrigation season. Robert Mullinax testified at the public hearing that a big gun sprinkler waters a circular area with a 130–foot radius.

THAT State Board of Control calculates that a sprinkler which watered a circular area with a 130 foot radius at nine (9) different sets would actually water 11.0 acres as shown on Exhibits X–3 and 44. Since McTiernan conceded that the Scotts had irrigated three (3) acres of the Shallcross property as shown in green on Exhibit No. 30, a total of 14.0 acres were watered in the SW1/4NE1/4 of Section 24, Township 57 North, Range 87 West (Shallcross property).

In effect, then, on remand the Board simply applied the calculation set out in footnotes three and four of *Scott I*. The Board also ordered the Scotts to "file the necessary petition(s) with the State Board of Control for [a] change of point of diversion and means of conveyance and to identify the lands actually irrigated under the John Ross Appropriation[.]" The Scotts subsequently appealed the Board's abandonment determination and order to file petitions for a change of point of diversion and means of conveyance.

[¶ 7] The district court independently reviewed the evidence adduced at the contested case hearing. The court divided the Shallcross property into various parcels: (1) the three-acre parcel McTiernan conceded was irrigated; (2) an 8.1 acre parcel south and west of the main subdivision road; (3) an 8.5 acre parcel; (4) 1.5 acres accounted by roads; and (5) a 3.6 acre and 4.1 acre parcel on the north side of the property. All parties agree that the three-acre parcel was irrigated.

[¶ 8] The district court noted the following testimony regarding the 8.1 acre parcel:

- Sam Scott drew a line in green on the 8.1 acre parcel on Exhibit X–3 representing a pipeline serving a big gun sprinkler. The line runs from the center of the southern boundary of the property extending in a curved fashion through the west end and passing easterly through a culvert on the subdivision road into the west end of the 8.5 acre parcel.
- Sam Scott testified that it took three or four and possibly five sets from the big gun sprinkler to get the west side of the parcel and back through the culvert down a line west and south of the subdivision road. In four days of irrigating between May 15 and May 19, Scott recorded at least ten and maybe twenty sets.
- John Dahlke, the area hydrographer, testified he witnessed big gun sprinklers operating on the 8.1 acre parcel in 1996. He observed, at a minimum, three sets to the south of the subdivision road. Dahlke drew circles on Exhibit 44 indicating where he observed the guns operating. The area observed by Dahlke would equal a minimum of 3.657 acres irrigated, not including overlap.
- Roy Powers, a neighbor of the Scotts, drew a large circle on Exhibit 44 just west of the sets Dahlke observed indicating where he saw the big gun sprinkler running in 1996. The circle takes in most of the property west of the subdivision road as it curves north. The circle drawn by Powers comports with Scotts' testimony. Powers estimated the irrigated acreage he observed was between five and seven acres.
- Sam Scotts' father-in-law, Harold Neu, testified he irrigated the entire 8.1 acre parcel beginning in July 1996 making at least two sets per day. Mona Scott testified she helped Neu irrigate the entire parcel.

In regard to the 8.5 acre parcel, the district court cited the following testimony:

- Robert Mullinax drew a red line running east and west parallel to a fence line on Exhibit X–3 indicating where he observed big gun irrigation pipeline. Mullinax drew a circle at the east end of the 8.5 acre where he observed the big gun sprinkler operating.
- Dahlke drew three circles in the 8.5 acre parcel along the pipeline drawn by Mullinax on Exhibit X–3. Both Mullinax and Dahlke observed three or four sets along the pipeline route.
- Sam Scott testified that he watered the 8.5 acre parcel in May of 1996 and August 1996. Scott did not testify to any specific number of sets although his testimony indicated extensive efforts to water the entire parcel.

Harold Neu indicated that he made two or three sets while assisting Scott during the May 1996 irrigation. Mona Scott testified she made one or two sets during the same time period. Neu further testified that in August 1996, he irrigated the entire 8.5 acre parcel south of the fence with the big gun sprinklers.

The court noted that there was no evidence in the record to show that the 1.5 acres of road or the 3.6 and 4.1 acre parcels on the north side of the Shallcross property were irrigated. Based on the foregoing evidence, the district court concluded there was not substantial evidence to support the Board's conclusion that 14.8 acres of the Shallcross property had been abandoned. The court held that 9.2 acres (1.5 acres plus 3.6 acres plus 4.1 acres) had been abandoned.

[¶ 9] Finally, the district court remanded the Board's order requiring Scott to file a petition to change his point of diversion and means conveyance for the John Ross Appropriation. The court found that there were no basic findings of fact to support this order. The Board was informed that if it merely meant for Scott to identify the points of diversion and means of conveyance without a formal petition it should have said so, but that it had no authority to require a petition to change them absent evidentiary support.

[¶ 10] This matter is now before us on appeal by McTiernan from the district court's decision.

## STANDARD OF REVIEW

[¶ 11] Our review of Board of Control decisions is guided by the standards set forth in Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2001):

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statuto-

ry provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

The issue presented to us concerns the existence of substantial evidence [1] in the record in support of the Board's decision. We have described substantial evidence as:

Substantial evidence is defined by this court as "relevant evidence which a reasonable mind might accept in support of the conclusions of the agency." The substantial evidence standard also requires that there be more than a scintilla of evidence. It is not required that the proof attain such a degree of certainty as to support only one conclusion to the exclusion of all others. Once the measure of evidence has surpassed the scintilla threshold, the possibility of drawing two inconsistent conclusions from the entire record does not mean

1. In several cases we have stated that adjudicated water rights will not be set aside unless justified by clear and convincing evidence. *See Scott I,* 974 P.2d at 970; and *Wheatland Irrigation District v. Pioneer Canal Company,* 464 P.2d 533, 537 (Wyo.1970). Neither case explicitly lays out how that standard is to be applied to an agency decision. In fact, *Scott I* analyzed the Board's decision exclusively within the context of the substantial evidence standard. Since we can resolve this case under the statutorily established substantial evidence standard, we will not discuss at this time the apparently inherent contradiction between a substantial evidence and a clear and convincing standard of review.

that the conclusion drawn by the administrative agency is not supported by substantial evidence. Even where this court, after reviewing the record, arrives at a different conclusion, the court cannot substitute its judgment for that of the agency's as long as the agency's conclusion is supported by substantial evidence.

*Joe Johnson Company v. Wyoming State Board of Control,* 857 P.2d 312, 314–15 (Wyo. 1993) (quoting *Department of Employment, Labor Standards Division v. Roberts Construction Company,* 841 P.2d 854, 857 (Wyo. 1992)). "For evidence to be sufficient to allow a 'reasonable mind' to accept an agency's conclusion, there must appear in the record evidence which allows either a definitive conclusion or a reasonable extrapolation based on the surrounding circumstances." *GID v. Wyoming State Board of Control,* 926 P.2d 943, 951 (Wyo.1996).

## DISCUSSION

[¶ 12] Preliminarily, we must address the effect of our remand in *Scott I.* McTiernan contends that our remand was a limited one since our concern at that time was about the form of the Board's findings, not the factual basis. McTiernan argues that the remand did not call for additional hearings or findings of fact. McTiernan points to the two footnotes cited in our discussion in *Scott I* as instructions to the Board on "how a proper finding satisfactory to the Court in this case should be set forth by the agency." In effect, McTiernan argues that all this Court expected on remand from the Board was "supplemental findings consistent with sound mathematics." According to McTiernan, this is what the Board did on remand when it made additional findings that Scott had made nine irrigation sets with the big gun and then used the calculations set forth in footnotes three and four of *Scott I* to arrive at a total of 14.0 acres irrigated.

[¶ 13] It is apparent that both McTiernan and the Board have misconstrued our order

in *Scott I.* If our intention was the simple application of the mathematical calculation set forth in the footnotes to our opinion in *Scott I,* then we could have conserved judicial and administrative resources by making the calculations and associated findings ourselves and ordered the entry of the appropriate judgment on remand. Instead, our decision specifically stated:

> There *may be* a sufficient factual basis for the board's determination that the Scotts irrigated only 11.1 acres of the Shallcross property in addition to the three acres conceded by McTiernan; however, that factual basis was not included in the formal findings of fact. We, therefore, *remand this case with directions that the board make additional findings of fact concerning the Shallcross property.*

*Scott I,* 974 P.2d at 973 (emphasis added). McTiernan is correct in the assertion that we did not mandate any additional hearings. However, our remand was predicated on the assumption that support for the Board's finding that only 14.1 acres of the Shallcross property had been irrigated already existed in the record, and that the Board had simply failed to make the appropriate citations to that record. Accordingly, our remand was with directions to the Board to make those additional findings of fact as required by the Wyoming Administrative Procedure Act.[2]

[¶ 14] Instead of making additional findings of fact, as ordered by this Court, the Board simply adopted our footnotes as a basis for supporting its original decision. Even a cursory review of our decision highlights the impropriety of the Board's action on remand. We made two observations in the course of our opinion in *Scott I* in support of our conclusion that the Board's decision was not supported by substantial evidence. First, we noted that the Board did not include Scott's testimony regarding how many sets he had done on the Shallcross property. Instead, the Board relied on that testimony after the fact during the appeal before this Court. Second, we noted in the two foot-

2. *See* Wyo. Stat. Ann. § 16–3–110 (LexisNexis 2001) which provides, in relevant part:

A final decision or order adverse to a party in a contested case shall be in writing or dictated into the record. The final decision shall include find-

ings of fact and conclusions of law separately stated. Findings of fact if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings.

notes that the Board's conclusion that 11.1 acres had been irrigated was not consistent with the facts. Specifically, we noted that if one assumed the nine sets accepted by the Board, and did the proper calculation using the area watered by a big gun, then one ended up with a different number of acres irrigated than that cited by the Board. The footnotes and the accompanying text were not a finding of fact by this Court that we remanded for adoption by the Board. They were examples of why the Board's decision was not supported by substantial evidence; it was not a directive for the Board to adopt specific findings. On remand, the Board should have made findings based on the record as to the acreage within the Shallcross property that was or was not irrigated by the Scotts. We now turn to the specific question of whether the Board's decision on remand is supported by substantial evidence in the record.

[¶ 15] In its review of the Board's decision on remand, the district court concluded that the Board's determination that the Scotts had irrigated 14.0 acres of the Shallcross property was unsupported by substantial evidence. The district court, after reviewing the record, then concluded that substantial evidence supported a conclusion that the Scotts had only failed to irrigate 9.2 acres of the Shallcross property. McTiernan challenges the district court's conclusion on two grounds. First, McTiernan argues that the district court engaged in an independent exercise in fact finding that invaded the Board's function as the exclusive authority to make factual conclusions. Second, McTiernan contends that the Board's finding that Scott irrigated only 14.0 acres was supported by substantial evidence. McTiernan points to Sam Scott's testimony that he made nine sets with the big gun sprinkler on the Shallcross property. He also notes that independent witnesses, along with the various exhibits presented during the hearing, corroborated Scott's testimony.

[¶ 16] Our own review of the record leads us to conclude that the district court's decision was correct. We defer to the Board's specialized knowledge and expertise regarding the use or nonuse of water and the technicalities involved in irrigation. *Joe Johnson Company*, 857 P.2d at 314. However, we will disturb an agency's decision when it is clearly contrary to the overwhelming weight of the evidence on the record. *Id.* (quoting *Vandehei Developers v. Public Service Commission of Wyoming*, 790 P.2d 1282, 1287 (Wyo.1990)). The district court and this Court are charged with reviewing an agency's decision for substantial evidence. Wyo. Stat. Ann. § 16–3–114(c)(ii)(E)· (LexisNexis 2001). That duty requires a review of the entire record to determine if there is relevant evidence that a reasonable mind might accept in support of the agency's decision. *Joe Johnson Company*, 857 P.2d at 314–15. Occasionally, the process of review will necessarily require the reviewing court to engage in an assessment of the facts adduced during the administrative hearing. That assessment does not usually involve a reweighing or reconsideration of the basic facts found by the agency. However, as a by-product of that process, the reviewing court may arrive at an ultimate conclusion derived from those basic facts that is different from the agency's.[3] A court will reach a different conclusion based on the evidence only in those situations where the agency's conclusion is clearly contrary to the weight of the evidence.

[¶ 17] In *GID*, we were confronted with the question of whether the Board's decision

---

**3.** "Basic facts are the historical and narrative events elicited from the evidence presented at trial, admitted by stipulation, or not denied, where required, in responsive pleadings. Inferred factual conclusions are drawn from basic facts and are permitted only when, and to the extent that, logic and human experience indicate a probability that certain consequences can and do follow from the basic facts. No legal precept is implicated in drawing permissible factual inferences. But an inferred fact must be distinguished from a concept described in a term of art as an 'ultimate fact.' So conceived, an ultimate fact is a mixture of fact and legal precept[.]" *RT Communications v. State Board of Equalization*, 11 P.3d 915, 920 (Wyo.2000) (quoting *Union Pacific Railroad Company v. Wyoming State Board of Equalization*, 802 P.2d 856, 860 (Wyo. 1990) and *Universal Minerals, Inc. v. C.A. Hughes & Company*, 669 F.2d 98, 102 (3rd Cir.1981)).

ordering the abandonment of Goshen Irrigation District's supplemental water right to 34 c.f.s. rather than 25 c.f.s. was supported by substantial evidence. 926 P.2d at 951. In support of its decision, the Board relied on the fact that GID had tested a new pump and the capacity of the pump was 34 c.f.s. We concluded that the Board's decision was not supported by substantial evidence because the record disclosed that the hydrographer who testified about the pump test stated: he did not consider himself an expert on pumps; his original estimate of the flow through the pump exceeded the pump's designed capacity; and, he admitted his estimate of the flow rate was "speculation." *Id.* We reversed the Board's decision and remanded with instructions for the Board to reduce GID's supplemental water right to 25 c.f.s. *Id.* at 951–52. In *GID*, we did not disturb the Board's basic factual findings that the pump had been tested and it had a capacity of 34 c.f.s. however, after a review of the entire record, we concluded that the evidence produced at the contested case hearing did not support the Board's ultimate conclusion. The same scenario unfolded before the district court in this case.

[¶ 18] On remand, the Board found that Sam Scott had made nine sets with the big gun sprinkler on the Shallcross property during the 1996 irrigation season. The Board also found that nine sets with a 130 foot radius sprinkler would water 11.0 acres. Combined with the three irrigated acres conceded by McTiernan, the Board concluded that 14.0 acres out of the 28.8 acres constituting the Shallcross property had been irrigated with the remainder abandoned. The district court did not disagree with these basic factual findings. However, after a review of the record, the district court concluded that the evidence in the record did not support the Board's ultimate conclusion. After our own review of the record, we agree with the district court.

[¶ 19] The Board was correct in noting that Sam Scott completed nine sets with the big gun sprinkler on the Shallcross property during the 1996 irrigation season. As the Scotts point out, however, the nine sets with the big gun sprinkler were done in May of 1996. For some inexplicable reason, the Board ignored all of the evidence of irrigation activity on the Shallcross property during July and August of 1996 done prior to McTiernan's filing of the abandonment petition.[4] That testimony was the basis of the district court's decision and is cited above in our statement of the facts. That testimony indicated extensive irrigation efforts by the Scotts in July and August. Independent witnesses, including John Dahlke, Robert Mullinax, and Roy Powers, whose testimony regarding the May irrigation activities was relied upon by the Board in reaching its original decision, corroborated the Scotts' testimony. Nevertheless, the Board utterly failed to address this evidence. The Board may have concluded that this testimony was not credible and unpersuasive. If that was the Board's conclusion, however, it was incumbent upon it to articulate its reasoning in the order. Wyo. Stat. Ann. § 16–3–110; *Billings v. Wyoming State Board of Outfitters,* 837 P.2d 84, 86 (Wyo.1992). Ignoring relevant evidence adduced at a contested case proceeding constitutes an arbitrary and capricious action.

[¶ 20] McTiernan has not directed us to any evidence in the record that would undermine or contradict the evidence cited by the district court, and we did not find any in the course of our review of the record. Accordingly, the district court's conclusion that the Scotts irrigated 19.6 acres of the Shallcross property during the 1996 irrigation season is affirmed.

[¶ 21] In his second issue, McTiernan challenges the district court's decision remanding the Board's order to the Scotts to "file the necessary petition(s) with the State Board of Control for [a] change of point of diversion and means of conveyance and to identify the lands actually irrigated under the John Ross Appropriation." The district court remanded the issue to the Board. The court concluded that "[w]ithout basic findings of fact regarding when and who made changes in diversions and means of conveyance, Scott would not know how to respond

---

4. McTiernan filed the petition on August 29, 1996. *Scott I,* 974 P.2d at 968.

to the Board's order." The court ordered the Board on remand to make findings of fact regarding which changes in point of diversion and means of conveyance require a petition from Scott. The district court did note that if the Board simply meant for Scott to identify his point of diversion and means of conveyance without formal petition, it had the power to require that action.

[¶ 22] On appeal, McTiernan notes that the John Ross Appropriation was a blanket appropriation covering 125 acres so that a definitive description of the lands remaining under the appropriation is necessary. He also points out that since the original water right was issued, the landscape surrounding Smith Creek had changed significantly to the extent that the original diversion point and irrigation canals no longer exist. Under these circumstances, McTiernan argues that the Board had the authority to make the order.

[7] [¶ 23] Historically, the Board has been granted broad powers to effectuate the statutory and constitutional mandates for the regulation of water in this state:

When questions arise involving the power and authority of the State Engineer and the Board of Control it is vital to remember that both the Board and the State Engineer are created by the state constitution and not by the result of any legislative enactment. Their general powers are derived from the constitution and not from the legislature, §§ 2 and 5 of Article 8, Wyoming Constitution. It is further noted that, constitutionally, the Board of Control has supervision of the water, its "appropriation, distribution and diversion" within this state under such regulations as may be set by the legislature and that the State Engineer by virtue of § 5, Art. 8, has general supervision of the waters of this state and the officers who administer the same. This distinguishes the Board of Control and its operations from some other administrative agencies.

. . . .

... If this court were to hold that the powers of the Board of Control are strictly limited to those as prescribed or set out specifically by the legislature, we would deny them the authority and the right of supervision of the waters of this state, their appropriation, distribution and diversion and thus defeat a clearly stated constitutional objective. The Board must, in order to insure proper administration and use of our water be said to possess such powers as will insure the maximum beneficial use of all water, without regard to its source.

*John Meier & Son v. Horse Creek Conservation District,* 603 P.2d 1283, 1288 (Wyo.1979). As we have noted, however, the Board's ability to exercise its broad authority is constrained by the requirement that its decisions are supported by findings of basic facts upon which its ultimate findings of fact and conclusions are based. *Scott I,* 974 P.2d at 969.

[¶ 24] The problem with the Board's order, as the district court recognized, is that it gives no guidance to the Scotts. The common owner of the Scott and McTiernan properties made many changes in the point of diversion and in the means of conveyance prior to the 1965 legislation that required petitions to the Board to make those changes. Naturally, the question then becomes to which point of diversion or means of conveyance is the Board referring? Without findings of fact to support this order, the Scotts are left to speculate on exactly what the Board is referring to in its order. The Board has the authority to define or quantify water rights when the original adjudication documents do not clearly set forth the scope of the water rights. *Scott I,* 974 P.2d at 974 (citing *Zezas Ranch, Inc. v. Board of Control,* 714 P.2d 759, 762–64 (Wyo.1986)). However, the Board required Scott to file a petition to *change* the point of diversion and means of conveyance—not merely an identification or quantification of the Scotts' water rights. The Board would clearly have the authority to require the Scotts to identify the lands under the John Ross Appropriation and the point(s) of diversion and means of conveyance associated with that water right. If that action was the intention of the Board when it made its order, then it may certainly modify its order to reflect that intent. On the other hand, if the Board intended to

require a formal petition from the Scotts to change the point of diversion and means of conveyance, then it will have to support its order with the necessary findings of fact.

## CONCLUSION

[¶ 25] The Board's decision that the Scotts had abandoned 14.8 acres of the 28.8 acre Shallcross property was not supported by substantial evidence. We concur with the reasoning of the district court in finding that the Scotts abandoned 9.2 acres of the subject property. Accordingly, the district court's decision is affirmed, and we remand with instructions for the Board to increase the Scotts' water rights under the John Ross Appropriation to 19.6 acres of the Shallcross property.

[¶ 26] The Board does not have the authority to order the Scotts to file a petition to change their point of diversion and means of conveyance absent appropriate findings of fact and conclusions. We remand this issue to the Board for proceedings consistent with this opinion.

[¶ 27] The district court's decision is affirmed.